## ADOPTION OF MARY
## (and a companion case[1] ).

Hampden. December 7, 1992. - April 6, 1993.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & O'Connor, JJ.

*Minor*, Care and protection, Custody, Adoption. *Parent and Child*, Care and protection of minor, Dispensing with parent's consent to adoption. *Evidence*, Child custody proceeding, Hearsay, Sexual conduct. *Adoption*, Dispensing with parent's consent, Visitation rights. *Due Process of Law*, Child custody proceeding. *Practice, Civil*, Findings by judge, Assistance of counsel.

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to the adoption of two minor children, no prejudicial error arose from the judge's admission of portions of certain investigative reports prepared by a court investigator for the underlying care and protection proceedings, where evidence contained in the admitted portions of the investigator's reports was repetitive of other evidence properly admitted and had no bearing on a contested fact or credibility dispute. [708-710]

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to the adoption of two minor children, the judge's finding that the mother was currently unfit to care for the children was supported by clear and convincing evidence and was not clearly erroneous. [710-711]

On appeal from a judgment pursuant to G. L. c. 210, § 3, dispensing with parental consent to the adoption of two minor children, this court declined to remand the case for proceedings to establish the mother's postadoption visitation arrangements where the judge had properly addressed postadoption visitation when he allowed the petition of the Department of Social Services, or to reach the merits of the mother's claim where there was no showing made of exceptional circumstances either to address the mother's failure to raise the issue of postadoption visitation at the trial or to address her claim of ineffective assistance of counsel. [711-713]

PETITION filed in the Hampden Division of the Probate and Family Court Department on January 3, 1991.

---

[1]Adoption of Michael.

The case was heard by *David G. Sacks*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Donald P. Whitney* for the mother.

*M. Francisco Palomo* for Department of Social Services.

*Carol Booth* for the minors.

LYNCH, J. The mother of two minor children appeals from a judgment of a Probate and Family Court judge dispensing with the need for her consent to the adoption of her children, pursuant to G. L. c. 210, § 3 (1990 ed.).[2] The mother, J.B., raises three issues on appeal: (1) whether an investigator's reports, which are admissible in care and protection proceedings in the Probate Court pursuant to G. L. c. 119, § 24 (1990 ed.), are also admissible in the proceedings to dispense with consent; (2) whether clear and convincing evidence was presented to support a finding that she was unfit as a parent; and (3) whether the judge erred in his findings and conclusions pertaining to her postadoption visitation rights. We transferred this case from the Appeals Court on our own motion. We now affirm.

We summarize the facts found by the judge based on the testimony of five witnesses, seventeen exhibits, and a joint stipulation of the parties. On November 24, 1979, J.B. gave birth to Michael out of wedlock. In 1982, J.B. married R.B., who is not Michael's father, and gave birth on February 10, 1983, to Mary. The Department of Social Services (department) became associated with the family as early as 1983, when a report was filed in accordance with G. L. c. 119, § 51A (1990 ed.)[3] (51A report), on the grounds of poor supervision and medical neglect. Lack of supervision and poor

---

[2]The children have different fathers. Michael's father did not file any objection to the department's petition. Mary's father objected but subsequently withdrew his objection.

[3]General Laws c. 119, § 51A (1990 ed.), provides in pertinent part: "Any physician, medical intern, hospital personnel engaged in the examination, care or treatment of persons, medical examiner, psychologist, . . . nurse . . . teacher . . . social worker, foster parent, firefighter or policeman, who in his professional capacity shall have reasonable cause to believe that a child under the age of eighteen years is suffering serious physical, emo-

judgment was the basis for another 51A report filed in 1985. In 1988, 51A reports were filed and substantiated on the grounds of physical abuse, lack of food, poor hygiene, and filthy living conditions. A social worker assigned to the family referred them for counseling services. By November of 1989, no significant progress had occurred so the department filed a care and protection petition on November 17. The children were adjudicated to be in need of care and protection with temporary custody awarded to the department. The children were placed in foster care on November 28, 1989. Then in January of 1990, a 51A report, subsequently substantiated, indicated that both children had suffered sexual abuse perpetrated by R.B.

On June 13, 1991, J.B. was convicted and received a suspended sentence for assault and battery on Mary which had occurred when the child attempted to report to her mother that her father was sexually molesting her. On the same day R.B. was also found guilty of indecent assault and battery on both children. He was sentenced to a term of two and one-half years in a house of correction and ordered to have no contact, either directly or indirectly, with the children. J.B., however, visited R.B. at his place of incarceration.

Michael, who began his life as a failure-to-thrive infant, has suffered from encopresis, and currently has attention deficit hyperactivity for which he takes medication. Although Michael was initially placed in a foster home with his sister, he exhibited inappropriate sexual behavior toward his sister and other children in the household. The department then placed him in a residential setting where he is in a special program to address his ongoing problems. His psychosexual risk assessment states that he has "extreme difficulty in trusting adults" and "has experienced abandonment and rejection throughout his life." While the department's long-term goal is placement in a normal family, it is unclear whether this will ever be possible. Mary has resided with the

tional injury, . . . sexual abuse, or from neglect . . . shall immediately report such condition to the department . . . ."

same foster family since July of 1991. This family wishes to proceed with adoption. They have received special training to deal with Mary's needs, exhibit appropriate loving and nurturing care, and have experience with children in her situation, having adopted another child. She is eating and sleeping well and involved in community activities.

1. *Admissibility of the investigator's reports.* A court investigator prepared three investigative reports for the underlying care and protection proceedings. The reports were prepared in January, March, and September of 1990. Within the reports are details of the family history and summaries of interviews with the parents, children, foster parents, social workers, and health care providers.

Prior to trial, J.B. moved to strike exhibits including these three reports.[4] Following a hearing on the motion, the judge ruled that the investigator's reports were admissible "because of the interrelationship between" care and protection proceedings and proceedings to dispense with consent, "although the stakes are different," noting that the preparer of the documents was present and subject to cross-examination. J.B. argues that the judge improperly extended the statutory exception applicable to the admission of the investigator's reports in the care and protection proceedings to this case when the judge specifically incorporated the reports in his findings, and the mother claims prejudicial error.

"Unquestionably, the removal of a child from a parent's custody is a substantial deprivation," but often necessary in

---

[4]The mother also claims prejudicial error in the admission in evidence of a document denoted as "contacts" which is a log maintained by the department's social worker. She claims that, although she did not specifically denote the "contacts" document in her motion to strike, it came under her general description of excluding all documents pertaining to prior care and protection proceedings, investigator's report, social worker's reports, findings, and conclusions. However, in the joint stipulation as to uncontested facts and admissibility of exhibits, the parties did not contest the admission of case narratives, service plans, or assessments prepared by the department's social worker. We see no difference in the contacts document and the other documents prepared by the social worker which would justify contesting their admission for the first time on appeal. *Adoption of Abigail*, 23 Mass. App. Ct. 191, 198 (1986).

cases of abuse and neglect. See *Care & Protection of Frank*, 409 Mass. 492, 498 (1991). In care and protection proceedings, an investigator's reports are admissible as a statutory exception to the hearsay rule to provide the court with needed information. *Custody of Jennifer*, 25 Mass. App. Ct. 241, 245 (1988) (investigator's reports admissible).[5] This evidentiary exception has been justified as a necessary tool to assist the judge in the navigation of the cross currents involved in determining the fitness of parents and the best interest of the children. *Custody of Tracy*, 31 Mass. App. Ct. 481, 485 (1991). See *Gilmore v. Gilmore*, 369 Mass. 598, 604-605 (1976) (best interests of child determined on facts presented at trial and facts gathered by court-appointed investigators). However, when a petition to dispense with parental consent for adoption is filed, the relationship between the parent and the intervening agency acquires an adversary character altering the parent's motivation to participate in the litigation. *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 392 Mass. 738, 743 (1984).

The judge here incorporated by reference specific portions of the investigator's reports "starting with family history from pages 4-7 in [e]xhibit 15 which is the January 22, 1990, report of the District Court investigator," and "starting with the updated family history from pages 3 to 6 in her September 10, 1990, report which is [e]xhibit 17." We have never declared that such reports are admissible in c. 210 proceedings, and it is unnecessary for us to decide the question here. The information contained within these designated pages contributed no new or additional information. The evidence was either in various other documents whose admissibility was not contested or the subject matter of direct testi-

---

[5]No similar statutory exception existed for proceedings to dispense with consent brought under G. L. c. 210, § 3 (1990 ed.). The procedures have now been changed so that an order to dispense with consent may be made in a G. L. c. 119, § 24, proceeding. St. 1992, c. 303 (effective March 30, 1993). We neither decide nor imply what effect this new procedure may have on the issues raised in this appeal.

mony subject to cross-examination. Due process concerns and fundamental fairness require that a parent have an opportunity effectively to rebut adverse allegations concerning child-rearing capabilities, especially in a proceeding that can terminate all legal parental rights. See *Duro* v. *Duro*, 392 Mass. 574, 580 (1984); *Custody of a Minor (No. 2)*, 378 Mass. 712, 723 (1979); *Custody of Tracy, supra* at 485-487; *Custody of Michel*, 28 Mass. App. Ct. 260, 265-266 (1990). J.B. had ample opportunity to rebut the evidence referred to in the reports and to test the reliability or accuracy of the investigator. *Gilmore* v. *Gilmore, supra* at 605. We also note that in J.B.'s proposed findings of fact, which the judge also incorporated by reference in his findings, she requests that specific portions of two of the reports be acknowledged.

Since the evidence contained in the admitted portions of the investigator's reports was repetitive of other evidence properly admitted and had no bearing on a contested fact or credibility dispute, no prejudicial error could arise from its admission.

2. *Evidence of current unfitness of parent.* When presented with a petition to dispense with parental consent to adoption, the judge must evaluate whether the parents are able to assume the duties and responsibilities required of a parent and whether dispensing with the need for parental consent will be in the best interests of the children. See G. L. c. 210, § 3; *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984); *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 268-269 (1978). The judge must find by clear and convincing evidence that a parent is presently unfit to provide for the welfare and best interests of the child in order to grant a petition that terminates a natural parent's legal rights. See *Adoption of Kimberly, ante* 526 (1993); *Care & Protection of Martha*, 407 Mass. 319, 327 (1990); *Custody of Two Minors*, 396 Mass. 610, 619 (1986). Absent a showing that the judge's findings are clearly erroneous, they are left undisturbed. See *Care & Protection of Martha*,

*supra* at 327; *Care & Protection of Valerie*, 403 Mass. 317, 318-319 (1988).

Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age. See *Adoption of Carlos*, 413 Mass. 339, 348 (1992); *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 589 (1981). The judge made detailed findings that the long history of physical and sexual abuse has been profoundly detrimental to the needs and best interests of both children. He found that J.B. had participated in the physical abuse and neglect of the children and was unable to protect her children from future abuse. The judge emphasized J.B.'s conviction for assault and battery of Mary, finding "a wholly unacceptable example of the lack of safety and protection that [Mary] has and predictably would receive from her mother." He also discussed the convictions of R.B. and the fact that J.B. "continues to have contact with [R.B.], visiting him where he is incarcerated. These are not simply '[s]aying good-bye' or 'sympathy' visits but are indicative of an on-going and not terminated relationship. This is contrary to the children's best interests which require [J.B.] to have no contact with [R.B.] so that the children can be assured of safety." The judge also found "[i]nsufficient progress was made by the mother, even with therapeutic and counselling intervention, to place the children with her by way of reunification." The record indicates ongoing, repeated patterns of serious parental neglect and abuse which can be relied on by the judge when determining parental unfitness. See *Adoption of Diane*, 400 Mass. 196, 204 (1987); *Custody of Two Minors, supra* at 620-621. The judge's determination that clear and convincing evidence exists to prove that the mother is unfit to provide for her children's best interests was not clearly erroneous.

3. *Postadoption visitation.* J.B. asserts that this case must be remanded for proceedings to establish postadoption visitation arrangements despite her failure to present any argu-

ment at trial that such visitation would be in the best interests of the children. She maintains that she was prejudicially impaired by ineffective counsel, who failed to argue that it would be in the best interests of the children to establish postadoption visitation.

Generally, issues not raised by a losing party in the trial court are not addressed on appeal, absent exceptional circumstances. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 697 (1984). Here, although J.B. did not raise postadoption visitation during the trial, the judge nevertheless addressed it in his decision. He ruled that it would not be in Michael's best interests to have any postadoption visitation arrangements with his natural mother "due to the history of the case as well as his residential placement and his extreme behavioral difficulties which necessitate that placement." The judge left visitation arrangements between J.B. and Mary to the sound discretion of Mary's caretakers based on the child's "desire to see her mother balanced against their view as to her safety and best interests as observed by their daily interaction with the child. There was insufficient evidence to make any other finding on this aspect of visitation." *Adoption of Gwendolyn*, 29 Mass. App. Ct. 130, 138-139 (1990) (within judge's discretion to leave matter of postadoption visitation in hands of adoptive parents). The judge, therefore, did address postadoption visitation when he allowed the petition and no remand on this issue is required. *Adoption of Abigail*, 23 Mass. App. Ct. 191, 199-200 (1986) (best interests of child rather than rights of parent are determinative in allowing postadoption visitation).

We turn to J.B.'s assertion of ineffective assistance of counsel. Ineffective assistance of counsel contentions in care and protection proceedings are assessed by determining "whether the 'behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer' and, if so, we further inquire 'whether [counsel's conduct] has likely deprived the defendant of an otherwise available, substantial ground of defence.' " *Care & Protection of*

*Stephen*, 401 Mass. 144, 149 (1987), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). To resolve factual disputes regarding trial counsel's performance during the original trial, the aggrieved party should file a motion for a new trial. *Care & Protection of Stephen*, *supra* at 150. We do not reach the merits of J.B.'s claim as there has been no showing made of exceptional circumstances to address either J.B.'s failure to raise the issue of postadoption visitation at the trial or to address her claim of ineffective assistance of counsel.

Finally, J.B. challenges the effectiveness of the children's counsel for not asserting at trial a desire on behalf of the children for postadoption visitation arrangements. J.B. has no standing to challenge the trial strategy of the children's counsel.

The judge's order granting the petition to dispense with parental consent to adoption of the two children is affirmed.

*So ordered.*