The mother appeals from decrees issued by a judge of the Juvenile Court finding her unfit and terminating her parental rights to her youngest five children.[3] We affirm.
Background. In a thorough and thoughtful decision, the judge made the following findings of fact, which are amply supported by the record. The mother's five youngest children, who are the subjects of the present case (hereafter, the children), were born between 2006 and 2010. The mother has had extensive involvement with the Department of Children and Families (DCF) regarding all eleven of her children due to concerns about domestic violence and abuse, exposing them to inappropriate men, neglect, and a general inability to care for them.
The mother is faced with many personal challenges. She has a lengthy criminal history and has been evasive with DCF regarding her substance abuse. Additionally, she has been involved with multiple men who were abusive to both her and a number of her eleven children during the eighteen years she has been involved with DCF. The mother has struggled to maintain steady employment and was unemployed at the time the present case originated. She has moved frequently and has been unable to obtain suitable housing during the course of this proceeding.
DCF's involvement with the mother as it relates to the children began two days after Stacey was born in August, 2006, when a report was filed pursuant to G. L. c. 119, § 51A (51A report), alleging that the mother had tested positive for cocaine during the previous month. The mother denied cocaine use, was uncooperative with DCF, and briefly fled the Commonwealth in the midst of the DCF investigation. After she returned to Massachusetts, the mother had four more children: Gayle, Christine, Jane, and Emily. DCF's involvement with the family was "minimal" from 2008-2012.[4]
DCF began another investigation of the family in 2012 after receiving a 51A report that Christine had facial injuries when she arrived at day care, where she told the staff that her father had punched her in the face. The mother "attempted to shape the child's statements," but Christine reiterated that her injuries were from her father punching her in the face. Four more 51A reports were filed in 2012 and early 2013, all of which DCF concluded were unsupported. The children's father reported that the mother was drinking heavily during this period, often not returning home until 4:00-5:00 A.M.
Three additional 51A reports were filed in June, 2013: the first after police observed one of the older children (not a subject of this proceeding) and a friend walking on the highway after the mother had failed to pick them up; the second after Emily, who has epilepsy, suffered a seizure due to the mother's failure to properly administer her medication; and the third because of Stacey's and Gayle's significant number of absences from and tardy arrivals at school. The mother was uncooperative during the ensuing investigation. DCF found that the reports were supported and that the mother neglected the children. The mother was arrested on charges not related to this case on July, 2013,[5] and the children were removed from her custody shortly thereafter.
Following the children's removal, the mother continued to be uncooperative with DCF and did not follow DCF's service plan for reunification. She failed to comply with several of her service plan tasks, including refusing services aimed at helping her personally[6] and others intended to specifically target the children's individual needs. She has failed to secure stable housing and has not consistently attended scheduled visits with the children, which she contends is due to the suspension of her driver's license.
The mother did not attend the five-day trial, following which the judge determined that the mother was unfit, that such unfitness was likely to continue into the indefinite future, and that termination of the mother's parental rights was in the best interests of the children. The judge accordingly issued decrees terminating the mother's parental rights. In making her decision, the judge considered the requisite factors under G. L. c. 210, § 3(c ), and found seven to be applicable. The record supports the judge's findings. Pertinently, she cited the mother's shortcomings as a parent,[7] her failure to comply with DCF's service plan, and her general lack of progress as a parent during her longstanding involvement with DCF in determining that she was unfit and that her unfitness was likely to continue.
Discussion. "In termination of parental rights cases, the trial judge must make specific and detailed findings demonstrating that close attention has been given the evidence. While subsidiary findings must be proved by a fair preponderance of the evidence, taken together these findings must prove parental unfitness, which is the 'critical inquiry,' by clear and convincing evidence." Adoption of Leland, 65 Mass. App. Ct. 580, 583 (2006) (citations omitted). "Unless shown to be clearly erroneous, we do not disturb the judge's findings, which are entitled to substantial deference." Adoption of Jacques, 82 Mass. App. Ct. 601, 606-607 (2012).
The mother raises three issues on appeal. First, she contends that the judge's finding of parental unfitness was not based on clear and convincing evidence because evidence of her substance abuse was stale. Second, she argues that the judge abused her discretion in terminating her parental rights rather than allowing her further opportunity to demonstrate that her unfitness was temporary. Finally, she asserts an abuse of discretion in the judge's decision not to order posttermination and postadoption visitation.
Substance abuse. The mother contends that several of the judge's findings regarding the mother's substance abuse rely on information from prior proceedings involving the older children. Because of this, she argues that the evidence of her substance abuse was stale and therefore improperly considered in the judge's fitness inquiry. See Adoption of Jenna, 33 Mass. App. Ct. 739, 744 (1992) ("[S]tale information cannot be the basis of current unfitness, [but] prior parental conduct is deemed relevant in assessing the parent's capacity and ability to care for the child"). The mother denies any ongoing substance abuse issues and, in compliance with a DCF request, she completed a substance abuse evaluation that concluded that she did not have a substance abuse problem. The mother's argument is not persuasive.
Notwithstanding the conclusion of the substance abuse evaluation, there was ample evidence to support the judge's consideration of the mother's substance abuse in the termination decision. Most significantly, there was evidence of continued substance abuse during the underlying proceeding, despite the result of the mother's substance abuse evaluation. The mother tested positive for cocaine during her pregnancy with Stacey, there was evidence that the mother often staying out drinking until early in the morning, and she was evasive with DCF regarding her substance abuse.[8] Furthermore, as noted above, past parental conduct is relevant to a fitness inquiry. Adoption of Jenna, supra.
Finally, regardless of any consideration of the mother's substance abuse, there was overwhelming additional evidence cited by the judge and amply supported by the record leading to the ultimate determination of unfitness.[9] As such, we conclude that the judge's finding that the mother was unfit was supported by clear and convincing evidence.
Temporary unfitness. To permanently terminate parental rights, a judge must conclude that there is not "a reasonable likelihood that the parent's unfitness at the time of trial may only be temporary." Adoption of Carlos, 413 Mass. 339, 350 (1992). The mother's argument that the judge abused her discretion in not allowing the mother further opportunity to demonstrate that her unfitness was only temporary is meritless. An abuse of discretion exists where the reviewing court determines that a judge's discretionary decision was "a clear error of judgment in weighing the factors relevant to the decision ... such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted).
The mother is correct that a judge should "consider whether, on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may only be temporary." Adoption of Carlos, 413 Mass. at 350. In fact, the judge did consider whether there was a reasonable likelihood that the mother's unfitness was only temporary and concluded that there was no such likelihood. The judge's decision was well supported, and we discern no abuse of discretion.
Visitation. The mother's final asserted error concerns posttermination and postadoption visitation. The judge declined to order any such visitation. The mother did not request such an order or otherwise preserve this issue at trial. See Adoption of Gillian, 63 Mass. App. Ct. 398, 408 (2005) (issue of visitation waived where parents did not raise it at trial). In the event that such an issue is waived, it will only be addressed on appeal in the event of "exceptional circumstances." Adoption of Mary, 414 Mass. 705, 712 (1993). We discern nothing exceptional about the circumstances surrounding this waiver.
The judge's decision to not order posttermination and postadoption visitation was within her authority. The judge had the authority to order visitation if she deemed it to be in the best interests of the children. Adoption of Ilona, 459 Mass. 53, 63 (2011). In determining this, a judge will look to see if there is " 'a significant, existing bond with the biological parent' whose rights have been terminated." Id. at 63-64, quoting from Adoption of Vito, 431 Mass. 550, 563 (2000).
The judge found that the mother was "indifferent toward the children," lacked "both affection and respect" for them, "referr[ed] to them by derogatory names," failed to visit them consistently, and declined an opportunity to participate in a bonding study. We conclude that the judge's decision not to order posttermination or postadoption visitation was supported by the record.
Decrees affirmed.

The mother was previously deemed unfit to parent her six oldest children (hereafter, the older children).

The judge noted that, due to the children's young ages during this period, they were likely not visible in the community.

Following the mother's arrest, she was convicted of operating a motor vehicle after suspension of her license, disorderly conduct, and threats.

These include domestic violence services, parenting help, neurological examinations, housing assistance, and therapy.

These included continued neglect, exposure to domestic violence and substance abuse, lack of housing stability, anger toward the children, and failure to provide proper medical care.

For example, the mother denied cocaine usage, stating that her positive test was because she may have had skin contact with someone else's cocaine. When asked by a court investigator about her drinking, she winked at a friend while saying that she only drank occasionally.

We pause to note that the mother's argument that "the judge's ultimate conclusion that Mother was unfit was based principally" on her findings of substance abuse is simply not true. Substance abuse was just one of many reasons noted by the judge in a detailed and comprehensive decision. Examples of neglect found by the judge included failing to properly medicate Emily, who has epilepsy (which had led to five seizures), several missed medical appointments for Emily, the children's truancy from school, lack of proper car seats for Emily and Jane, failure to accept offered early intervention services for Emily's speech development problems, and evidence of a burn on Emily's leg.