Following a trial, a Juvenile Court judge found that Giselle's parents were unfit to parent her and issued decrees dispensing with their rights to consent to her adoption. See G. L. c. 119, § 26 ; G. L. c. 210, § 3. On appeal, the mother claims the evidence did not support the judge's conclusions that she was an unfit parent and that termination of her parental rights was in Giselle's best interests. The father's principal claims are that the judge relied on inadmissible privileged communications between the mother and her domestic violence counselor in concluding that the father was unfit, and exceeded her authority in denying posttermination visitation between the father and Giselle. We affirm.
In a comprehensive written decision, the judge made 247 factual findings. We need not repeat them in detail, as neither parent claims the findings were clearly erroneous. It suffices to say there was substantial evidence that each parent suffered from mental health problems and drug addiction. In addition, the relationship between the mother and father was marked by verbal, emotional, and physical abuse. Giselle, who was born addicted to methadone due to her mother's treatment for heroin addiction, has resided with her maternal grandparents since birth in a preadoptive placement. She continues to thrive in that environment. She was three years old at the time of trial.
Discussion. The central questions in a case to terminate parental rights are whether the parent is unfit and whether termination is in the best interests of the child. See Adoption of Ilona, 459 Mass. 53, 59 (2011). The judge's findings on these issues must be supported "by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "We give substantial deference to [the] judge's decision ... and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, supra.
1. The mother's appeal. The mother claims that the judge ignored a positive trend in her behavior, that the Department of Children and Families (DCF) did not make reasonable efforts to assist her, and that termination of her parental rights was an abuse of discretion. We disagree. A parent is unfit when she places the child at a serious risk of "abuse, neglect, or other activity harmful to" the child. Adoption of Katharine, 42 Mass. App. Ct. 25, 28 (1997). We consider the "parent's character, temperament, conduct, and capacity to provide for the child." Adoption of Mary, 414 Mass. 705, 711 (1993).
The judge's undisputed findings establish by clear and convincing evidence that the relationship between the mother and father was abusive and violent. Violence in the home adversely impacts a child, and its presence weighs heavily in determinations of parental fitness and a child's best interests. See Custody of Vaughn, 422 Mass. 590, 595 (1996) ; Adoption of Ilona, supra at 62. Here, despite the "toxic" nature of the parents' relationship, the mother was unable to separate from the father. The evidence showed that the mother repeatedly left and then reconciled with the father. We agree with the judge's conclusion that this conduct posed a risk to the mother's recovery from drug addiction, and also to Giselle's welfare.
Although the judge credited the mother's testimony that she was no longer using heroin, the mother failed to provide urine screens to her assigned social worker and failed to provide complete releases for her treatment facilities, precluding an accurate assessment of her sobriety. Where the mother prevented DCF from accessing this information, the judge was permitted to draw a negative inference. Care & Protection of Vieri, 92 Mass. App. Ct. 402, 406-407 (2017).
It was also undisputed that the mother did not have stable housing. The parents were evicted from their residence in 2013. They left another apartment in 2014 because the landlord was seeking to evict them, and in 2015 the mother lived with various friends and refused to provide DCF with a consistent address. Although the mother testified that she was actively looking for an apartment, at the time of trial she had resumed living with the paternal grandmother. This inability to provide stable housing for Giselle was a factor that supported a finding of unfitness and termination of her parental rights. See Petition of the Dept. of Pub. Welfare to Dispense with Consent of Adoption, 383 Mass. 573, 591-592 (1981).
We are not persuaded by the mother's claim that DCF did not make reasonable efforts to promote reunification. "[A] parent must raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made." Adoption of Gregory, 434 Mass. 117, 124 (2001). "Generally, issues not raised by a losing party in the trial court are not addressed on appeal, absent exceptional circumstances." Adoption of Mary, supra at 712. Were we to reach the issue, however, there was ample evidence that the mother's volatile and abusive relationship with the father persisted for years, despite her participation in multiple services to address her parental deficiencies. "In these circumstances, where the [mother] has had ample opportunity to achieve fitness as a parent but has failed to follow through, it is only fair to [Giselle] to say, at some point, 'enough.' " Adoption of Nancy, 443 Mass. 512, 517 (2005).
2. The father's appeal. a. Privileged communication. On February 24, 2015, Dale Brown, a domestic violence victims' counselor, and Sandra Botelho, the mother's assigned DCF social worker, met with the mother for a "case consultation." At trial, over the mother's objection, Brown testified that the mother asked "to be placed in a domestic violence shelter and also discussed getting a restraining order," because the father's behavior "was out of control." On appeal, the father claims that the judge erred in admitting that testimony because it was privileged pursuant to G. L. c. 233, § 20K.[3]
The argument is unavailing. Passing on whether the father has standing to object on the basis of a privilege held by the mother, and whether he waived the argument by failing to raise a timely objection at trial, we discern no prejudice to the father because there was ample other evidence of his domestic violence. The police responded to reports of violence between the parents fourteen times. There was evidence that the father threw the mother down a flight of stairs. In October, 2014, the mother reported that she had left the father because he was verbally aggressive and had pushed her. The following month she reported that the aggression was increasing. In April, 2016, the mother was granted an abuse prevention order against the father after she asserted that father had placed her in fear of imminent serious physical harm on multiple occasions over the preceding three years.[4] Thus, even if the challenged testimony had been excluded, there was compelling evidence that the mother was a victim of the father's domestic violence. See Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003). When considered together with the father's mental health problems and long history of substance abuse, the evidence of the father's parental unfitness was clear and convincing. Accordingly, we discern no abuse of discretion in the termination of his parental rights.
b. Postadoption visitation. "Once it is established that a parent is unfit, the decision whether to grant postadoption or [posttermination] visits must be left to the sound discretion of the trial judge." Adoption of Terrence, 57 Mass. App. Ct. 832, 839 (2003) (quotation omitted). The father claims that the judge abused her discretion when she concluded that "posttermination/post-adoption visitation between [Giselle] and [the f]ather is not in the child's best interest." We disagree. "An order for ... visitation is not warranted in the absence of a finding that a significant bond exists between the child and a biological parent and 'that continued contact is currently in the best interests of the child.' " Adoption of John, 53 Mass. App. Ct. 431, 439 (2001), quoting from Adoption of Vito, 431 Mass. 550, 563-564 (2000). Here, the judge's conclusion that no such bond existed was supported by the evidence. The father only engaged in limited visitation when it was made available to him. Moreover, "his persistent anger and hostility towards the maternal grandparents undermine[d] his capability to provide a safe environment for [Giselle]." In light of this evidence and father's longstanding struggles with anger management and substance abuse, the judge acted within her discretion in concluding that posttermination visitation was not in Giselle's best interest.
Decrees affirmed.

"A domestic violence victims' counselor shall not disclose [a] confidential communication without the prior written consent of the victim.... Such confidential communication shall not be subject to discovery in any civil, legislative or administrative proceeding without the prior written consent of the victim...." G. L. c. 233, § 20K, inserted by St. 1986, c. 492.

The challenged testimony is merely cumulative of the mother's own signed statements in the abuse prevention order, which were admitted in evidence.