NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-910

ADOPTION OF JUNE.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a judge of the Juvenile Court found the mother unfit to parent her daughter, June, terminated the mother's parental rights, and granted permanent custody of the child to the Department of Children and Families (DCF).  The mother appeals, arguing that the trial judge (1) abused her discretion when she relied on clearly erroneous findings and conclusions of law to find the mother unfit and terminate her parental rights; (2) abused her discretion when she allowed the father to cross-examine witnesses after he had stipulated to the termination of his parental rights; and (3) impermissibly shifted the burden of proving fitness onto the mother.[2]  We affirm.

---

[1] A pseudonym.

[2] The father is not a party to this appeal.

Background.[3]  On the day of June's birth in April 2018, a report pursuant to G. L. c. 119, § 51A (51A report), was filed with DCF alleging neglect of June by the mother and citing concerns about the mother's erratic behavior and positive marijuana tests during early pregnancy.  The allegations were supported, and a case was opened for services.

Twenty-six days after June's birth, DCF responded to two 51A reports made on the same day.  The first alleged that the mother tossed June in the air when she was too young to support her own head and attacked the father when he attempted to soothe the child.  The second alleged that the mother continued to toss June and threatened to throw her in a river, stab her, and stop feeding her.  DCF took emergency custody of the child that day and later gained temporary custody after the mother waived her right to a hearing.

DCF created at least three action plans to help the mother overcome the obstacles preventing her from successfully parenting June.  The first required, among other conditions, that the mother attend "inter-partner domestic violence classes," receive counseling and therapy services to address her mental health concerns, demonstrate her housing stability, and

---

[3] We summarize the relevant facts and procedural history from the judge's findings, reserving some details for discussion of the issues.

refrain from drug use while caring for June. The second additionally required the mother to affirmatively seek housing and confirm her weekly visits with June after she had missed multiple appointments and arrived late, sometimes up to an hour after the scheduled start time. The third reiterated existing requirements. Though the mother intermittently engaged in some actions required by the plans, she never adequately complied with DCF's requirements.[4]

Eight months after taking emergency custody, DCF changed June's goal from reunification with her parents to adoption. The mother and the father were present at the custody trial, which commenced in 2021. Two days into the trial, the father stipulated to the termination of his parental rights and supported DCF's open adoption plan. After the stipulation, the trial judge allowed the father's counsel to cross-examine witnesses to establish his position as adverse to the mother gaining custody of June. After trial, the judge found the mother unfit and terminated her parental rights. She cited the mother's history of domestic violence in relationships, drug abuse, mental health concerns, housing instability, and other significant factors as reasons for termination.

---

[4] The mother was still seeking housing at the time of trial and did not have suitable housing for June.

Discussion. 1. Unfitness. The mother argues that the judge relied on clearly erroneous findings and conclusions of law about her history with domestic abuse, her substance use, and her mental health concerns. Further, she contends there was no significant nexus between these three factors and her parenting ability to support the ultimate finding of unfitness. Therefore, she argues, the judge abused her discretion when she relied on these factors to ultimately find the mother unfit and terminate her parental rights. We disagree.

a. Challenges to the judge's findings. In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if so, whether the child's best interests will be served by terminating the legal relation between parent and child. Adoption of Nancy, 443 Mass. 512, 515 (2005). This court defers to a trial judge's decision to terminate and "reverse[s] only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011). "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

4

committed.'"  Adoption of Larry, 434 Mass. 456, 462 (2001),
quoting Custody of Eleanor, 414 Mass. 795, 799 (1993).

The record supports the judge's findings and conclusions regarding the mother's history of domestic abuse.  The father abused her on at least fifteen occasions during their two-year relationship, including one incident where the father tackled and choked the mother while she held June.  Despite recurrent violence, resolutions to leave, and multiple restraining orders taken out by the father and the mother against each other, both continued abusive contact.  This pattern of behavior supports the judge's conclusion that the mother had an "ongoing inability to distance herself from [the] [f]ather."  Three months into the mother's next relationship, the police responded to an altercation between her and her partner when both were intoxicated and in a "yelling match."  Given this evidence of at least three years of domestic abuse within the mother's personal relationships, we see no error in the judge's characterization of these experiences as "a history of domestic violence relationships."[5]

---

[5] The mother challenges the trial judge's finding that she began dating an individual named "Kool-Aid."  This finding is immaterial because the judge never relied upon it to conclude that the mother had a "history of domestic violence relationships."

The information in the record establishes the mother's substance abuse and supports the conclusion that she was unable to "appropriately reflect" on her history of substance abuse. In addition to testing positive for marijuana during the first two months of pregnancy, the mother admitted to continued use of the drug after June's birth. After the child's removal, the mother engaged in underage drinking on at least one occasion which warranted police intervention. The trial judge was not presented with evidence that the mother had addressed her previous substance abuse issues, and therefore did not err in drawing her conclusion. See Adoption of Mario, 43 Mass. App. Ct. 767, 771 (1997). This court is not left with the "definite and firm conviction" that the trial judge made a mistake. Adoption of Larry, 434 Mass. at 462.

Finally, the judge did not err in concluding that the mother "ha[d] not taken the necessary steps to regulate her mental health" and that she denied her mental health concerns. The mother was diagnosed with ADHD, PTSD, anxiety, depression, and dyslexia. She consulted a therapist on-and-off for three years but stopped after her pregnancy. She failed consistently to attend therapy and counseling sessions -- requirements set by her three action plans -- and did not attend any sessions between October 2021 and February 2022. At the time of trial, she refused to acknowledge her mental health concerns and

6

believed she was stable.  Her mental health diagnoses, coupled with her unwillingness to address or even acknowledge them, support the trial judge's conclusions.

b.  Nexus to unfitness.  The mother contends that there was no significant nexus between her parenting ability and the three factors discussed supra.  Therefore, she argues, the trial judge abused her discretion when she relied on them to ultimately find the mother unfit and terminate her parental rights.  We disagree.

"It is well documented that witnessing domestic violence, as well as being one of its victims, has a profound impact on children."  Custody of Vaughn, 422 Mass. 590, 599 (1996); Care & Protection of Lillith, 61 Mass. App. Ct. 132, 141 (2004) ("witnessing domestic violence is itself a 'grievous' harm").  A parent's inability to end their relationship with their abuser bears on their ability to protect their child from further exposure to abuse.  See Adoption of Mary, 414 Mass. 705, 711 (1993).  As discussed, June was exposed to recurrent domestic violence between the mother and the father.  Despite attending a domestic violence course, the mother could not recognize herself as an aggressor or victim in this cycle of abuse.  The trial judge did not "need to wait for inevitable disaster to happen" when June would witness domestic violence again.  Adoption of Katharine, 42 Mass. App. Ct. 25, 32 (1997).  We agree with the

7

judge that the mother's inability to recognize, navigate, and remove herself from domestic abuse situations demonstrated her inability to parent June and "keep the subject child safe and the home free from domestic violence."

Substance abuse during and after pregnancy cannot be the sole ground for terminating parental rights without evidence that the parent "provide[d] less than minimally acceptable care" for the child. Adoption of Katharine, 42 Mass. App. Ct. at 31. See id. at 34 ("we do not think a cocaine habit, without more, translates automatically into legal unfitness. . ." [emphasis added]). While the trial judge did not expressly connect the mother's continued substance abuse to her inability to provide care for June, here, the mother's substance abuse was not viewed in isolation. The judge relied on it, in conjunction with domestic violence, mental health concerns, and housing instability, to support her over-all finding of unfitness. While drug use alone would not have been enough to support termination, the judge did not err when considering it with the other factors contributing to the mother's inability to care for June.

Mental disorders are "relevant only to the extent that [they] affect[] the parents' capacity to assume parental responsibility." Adoption of Frederick, 405 Mass. 1, 9 (1989). A parent's "unwillingness to adhere to DCF's service plan, which

8

required [the parent] to obtain treatment for her mental health challenges and substance use disorder, is 'relevant to the determination of unfitness.'" Adoption of Luc, 484 Mass. 139, 147 (2020), quoting Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987). At the time of trial, the mother was no longer taking medication to manage her mental health disorders. She failed to attend counseling and therapy sessions, services required by DCF so that she might care for June at a future date. We agree with the trial judge that the "[m]other's inability to take responsibility for herself, her actions, and her mental health," demonstrated through her failure to address or acknowledge her mental health concerns, indicates that the "[m]other is unfit to assume parental responsibility for the subject child."

The trial judge did not abuse her discretion when she terminated the mother's parental rights. An abuse of discretion occurs when a judge makes "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Given the robust evidence of the mother's domestic abuse, substance abuse, and mental health concerns, the trial judge did not err when she weighed these factors to find the mother unfit. Further, the trial judge did

not rely solely on these three factors.  She properly considered the mother's housing instability, her refusal to cooperate with DCF's action plans, and the length of separation between the mother and June.[6]  We find no error in judgment in her careful analysis of these relevant factors.

2.  <u>Father's continued participation at trial</u>.  The mother argues that the trial judge abused her discretion by allowing the father to advance his position against the mother at trial after he had already stipulated to the termination of his parental rights.  We disagree.

Though a parent who has terminated parental rights does not have a right "to determine the child's future," a judge may exercise their discretion to allow the parent to participate at trial.  <u>Adoption of Malik</u>, 84 Mass. App. Ct. 436, 438, 441 (2013)(parent who had stipulated to termination of her parental rights allowed to participate in permanency hearing to determine which of two adoption plans was in child's best interests).  Allowing the father to advance his position was not a "clear error of judgment" but rather a reasoned decision made to help the judge determine which outcome -- DCF's open adoption plan or custody with the mother -- was in the best interests of June.

---

[6] The trial judge properly weighed and considered factors ii, iii; v; vi; vii; viii; and xii, pursuant to G. L. c.  210, § 3 (<u>c</u>).

10

L.L., 470 Mass. at 185 n.27.  See Malik, 84 Mass. App. Ct. at 440-441.

3.  Burden of proof.  The mother claims the trial judge impermissibly shifted the burden of proving parental fitness onto her by stating in the findings that the mother failed to "demonstrate fitness" and "demonstrate that she will make the necessary changes to address her domestic violence, housing stability, and mental health."  We disagree.

The judge made clear that she understood the burden of proving unfitness was on DCF.  Indeed, her pertinent finding in this regard was, "This Court finds that [DCF] has demonstrated, by clear and convincing evidence, that [m]other is currently unfit and has remained unfit to parent the subject child."  Despite the handful of references upon which the mother relies, in context, the judge did not shift the burden of proof.[7]  See Adoption of Terrence, 57 Mass. App. Ct. 832, 836 (2003) (declining to interpret judge's out-of-context statements, such as "has not demonstrated that she is capable of caring for" and

_____

[7] We are not persuaded by the mother's argument that "the judge's view of certain aspects of the record, particularly those related to [m]other's compliance with action plans" placed "an even greater burden [on her] to demonstrate her fitness."

11

"has demonstrated little change in her situation or behavior,"
as burden-shifting language).

                                    Decree affirmed.

                                    By the Court (Henry,
                                      Desmond & Englander, JJ.[8]),

                                    *Joseph F. Stanton*

                                    Clerk


Entered:   August 23, 2023.

---

[8] The panelists are listed in order of seniority.