NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1405

ADOPTION OF QAVI (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a judge of the Juvenile Court found the father unfit to parent his two teenaged children, Qavi and Gia, and entered decrees terminating his parental rights to both children.  In this appeal, the father challenges, among other things, the judge's determination of his permanent unfitness, the termination of his parental rights, and the approval of the permanency plan proposed by the Department of Children and Families (department).[2]  We affirm.

---

[1] Adoption of Gia.  The children's names are pseudonyms.

[2] Since the conclusion of the trial, Qavi has turned eighteen.  To the extent that the father challenges the decree relating to Qavi, his appeal is moot.  See Care and Protection of Erin, 443 Mass. 567, 568 (2005).  We therefore dismiss so much of the appeal as relates to Qavi, and vacate the decree as to him.

Background. The department initiated the care and protection proceedings underlying this matter in 2021 after the father was arrested for killing the mother.[3] The father was incarcerated awaiting trial on the resulting criminal charges at the time of the best interests trial and the entry of the decrees at issue in this appeal.

Discussion. "To terminate parental rights to a child, [a] judge must find, by clear and convincing evidence, that [a] parent is unfit and that the child's 'best interests will be served by terminating the legal relation between parent and child.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011). "'[P]arental unfitness' means 'grievous shortcomings or handicaps' that put [a] child's welfare 'much at hazard.'" Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021), quoting Adoption of Katharine, 42 Mass. App. Ct. 25, 28 (1997). "In ascertaining parental fitness, [a] judge 'may consider past conduct to predict future ability and performance.'" Adoption of Jacob, supra, quoting Adoption of Katharine, supra at 32-33. Parental unfitness must be proved by clear and convincing evidence, Adoption of Rhona,

---

[3] The father was indicted for murder in the first degree, and was also charged with kidnapping, battering with a dangerous weapon, and assaulting the children's maternal grandmother; breaking into the house in which the children and their mother lived; and burning the house down.

57 Mass. App. Ct. 479, 488 (2003), and we will disturb the judge's findings "only if they are clearly erroneous." Adoption of Paula, 420 Mass. 716, 729 (1995). We review the judge's determination of the children's best interests for an abuse of discretion. See Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). In conducting our review, we defer to the judge's assessment of the weight and credibility of the evidence. See Custody of Eleanor, 414 Mass. 795, 799 (1993).

1. Clearly erroneous findings.[4] The judge presiding over this matter made 249 "specific and detailed" findings in support of his decision to terminate the father's parental rights, which "demonstrate that close attention has been given [to] the evidence."[5] Adoption of Hugo, 428 Mass. at 224. The father takes issue with these findings to the extent that they reflect the judge's determination that the father failed to complete any of the tasks on his October 2022 action plan.

The action plan included five tasks: (1) abide by the abuse prevention order that was issued against the father and in

---

[4] We note that the father's attorney disassociated herself from all other arguments raised in this appeal in accordance with principles discussed in Commonwealth v. Moffett, 383 Mass. 201, 208-209 (1981).

[5] The judge's decision also includes forty-two conclusions of law. In our discussion, we do not distinguish between the "findings" and the "conclusions."

favor of the children, (2) meet with the department social worker by phone, (3) attend all court dates, (4) "[a]ddress mental health concerns by engaging [in] a psychological evaluation and follow recommendations[,]" and (5) "[s]ign releases to the [d]epartment for any collaterals in order to obtain information on progress/setbacks." The record supports the judge's finding that the father did not respond to the department social worker's outreach while the action plan was in place, and that he therefore failed to comply with the second task on his action plan. There was no evidence, however, that the father failed to abide by the restraining order (per the first task) after the department issued the action plan in 2022. Further, while it is true that the father failed to attend all court dates (per task three), engage in a psychological evaluation (per task four), and sign releases for collateral service providers (per task five), it appears from the record (and the judge did not find otherwise) that the father's ability to complete those tasks was limited based on his incarceration at the time the action plan was in place.[6] Accordingly, whether the father argues that aspects of each of the challenged findings were clearly erroneous, or that the department failed

_____

[6] We have not overlooked the father's testimony at trial that he did not believe he needed a psychological evaluation, but it does not appear from the record that he was offered and refused the evaluation required under the action plan.

4

to make reasonable efforts to reunite him with the children by setting unattainable goals for him, the arguments have some force.  See Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, 376 Mass. 252, 266 (1978) ("State is required to make every effort to strengthen and encourage family life before it may proceed with plans to sever family ties permanently"); Adoption of Bea, 97 Mass. App. Ct. 416, 428 (2020), quoting Custody of Eleanor, 414 Mass. at 799 ("clear error" exists when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed").

Even if we were to conclude that the challenged findings were clearly erroneous, however, after careful consideration of the "erroneous findings in the context of all of the evidence," Adoption of Ilian, 91 Mass. App. Ct. 727, 730 (2017), we would not be persuaded, for the reasons discussed infra, that the judge abused his discretion in terminating the father's parental rights to the children.  Likewise, even if the department failed to make reasonable efforts after 2022 to reunite the family (a conclusion we do not reach in light of the facts), the judge was well within his discretion to determine that termination was in

the children's best interests.[7]  See Adoption of Ilona, 459 Mass. at 61, quoting G. L. c. 119, § 29C ("A determination by [a] court that reasonable efforts were not made shall not preclude the court from making any appropriate order conducive to [a] child's best interest").

2.  Father's unfitness and best interests of the children. The overarching concern expressed through the judge's findings was the children's safety.  As the judge found, the father had a lengthy history of domestic violence that included verbal and physical abuse of the mother, and, on at least one occasion, physical abuse of Qavi.  "[P]hysical force within the family is both intolerable and too readily tolerated, and . . . a child who has been either the victim or the spectator of such abuse suffers a distinctly grievous kind of harm."  Adoption of Garret, 92 Mass. App. Ct. 664, 671 (2018), quoting Custody of Vaughn, 422 Mass. 590, 595 (1996).  See Adoption of Xarissa, 99 Mass. App. Ct. 610, 618 (2021) (domestic violence "infect[ing] the [parent's] life" is relevant to analysis of unfitness).  The father also repeatedly disregarded the terms of the abuse

---

[7] It bears emphasis that, under some circumstances, the department's efforts to accommodate the needs of incarcerated parents when creating or implementing action plans may fall short of the required "reasonable efforts" standard, such as if parents are required to complete tasks that are impossible to complete while incarcerated.  The father's claim that the department did not take "reasonable efforts" in the present case is not actionable, however, given the facts here.

prevention order the mother obtained in 2014 in an effort to protect herself and the children,[8] and he continues to deny any culpability for the domestic violence in the family.  Moreover, despite his claims that he had a strong relationship with both children, the father previously elected to forgo visits with the children rather than complete a court-ordered anger management and parenting program; as a result, by the time of the trial, the father had not seen either of the children in over six years.  See Adoption of Paula, 420 Mass. at 729 (lack of insight into parental shortcomings relevant to analysis of parental unfitness).  Finally, and significantly, the judge found that there was "ample evidence" that the father killed the mother and burned down the house in which the mother and the children lived.  See Guardianship of a Minor, 1 Mass. App. Ct. 392, 396 (1973) ("Violence of temper, . . . or inability or indisposition to control unparental traits of character or conduct, might constitute unfitness").  The father's conduct demonstrated a "pattern of minimizing responsibility for incidents resulting in harm to [the] children, [an] inability to recognize the effects of the violence on the [children], and [a] limited understanding of [his] role[] in causing . . . trauma in the family, . . . [and was] 'compelling evidence for a finding of parental

---

[8] This order was ultimately extended on a permanent basis.

7

unfitness.'"  Adoption of Flavia, 104 Mass. App. Ct. 40, 49

(2024), quoting Adoption of Talik, 92 Mass. App. Ct. 367, 374

(2017).

We are not persuaded by the father's arguments that his

unfitness, if any, was not the result of his own "failings," but

rather "DCF's failures to provide him with a viable family

action plan or to make reasonable efforts toward reunification";

or that the judge erred in finding that his unfitness at the

time of trial was not "temporary."  As we have noted, the judge

found that this family had a lengthy history of domestic

violence centering on the father's abuse of the mother, and that

the father has neither acknowledged his role in that violence,

nor has taken any steps to remedy it.[9]  Additionally, the judge

found that the father has a history of failing to cooperate with

the department and refusing to attend anger management and

parenting classes, see Adoption of Rhona, 63 Mass. App. Ct. 117,

126 (2005) (refusal to attend counseling program relevant to

fitness determination); has consistently prioritized his own

_____

[9] The judge did not credit the father's trial testimony
denying that he was abusive.  Other than as we have already
discussed, the father does not argue that the judge's findings
are clearly erroneous, and we thus defer to the judge's
unchallenged findings.  See Custody of Eleanor, 414 Mass. at
799.  We also note the judge's findings that the father had a
history of violence and criminality outside of the home.  See
Adoption of Mary, 414 Mass. 705, 711 (1993) (parent's character
and conduct relevant to determination of unfitness).

interests over the children and his relationship with them; and has demonstrated an ongoing inability to meet the children's specific emotional needs. See Adoption of Mary, 414 Mass. 705, 711 (1993); Adoption of Yvonne, 99 Mass. App. Ct. 574, 577 (2021). "[A] judge may 'consider past conduct to predict future ability and performance.'" Adoption of Yvonne, supra at 579, quoting Adoption of Katharine, 42 Mass. App. Ct. at 33. We thus discern no error in the judge's determination that there was clear and convincing evidence that the father's unfitness is permanent. Against this backdrop, moreover, we discern no abuse of discretion in the judge's decision that termination of the father's parental rights was in the best interest of the children.[10] See Adoption of Hugo, 428 Mass. at 225 (abuse of discretion standard).

3. Father's permanency plan. At the time of trial, the father expressed a preference that the children reside with a member of his family; both of his proposed resources (the children's paternal grandmother and paternal uncle), however, indicated an inability or unwillingness to serve as the children's placement. On these facts, the judge found that

---

[10] The father's argument that the "ongoing love" and "father-daughter bond" precluded the judge from terminating his parental rights to Gia does not rise to the level of appellate argument, and we do not consider it. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

"[the] Father had no set . . . permanency plan for [the] children."[11]  Absent the father's proposal of an "adequate" plan, Adoption of Dora, 52 Mass. App. Ct. 472, 475 (2001), the judge thus properly limited his "careful evaluation" to the department's plan.  Id., quoting Adoption of Lars, 46 Mass. App. Ct. 30, 31 (1998), S.C., 431 Mass. 1151 (2000).

To the extent that the father's challenge to the judge's approval of the department's plan on its own merits rises to the level of appellate argument, see Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), we are not persuaded that the judge abused his discretion in placing the children with their maternal grandmother and, in Gia's case, appointing as coguardians the maternal grandmother and the mother's close friend with whom Gia had a long familiarity and demonstrated bond.  See Adoption of Willow, 433 Mass. 636, 647 (2001) (underscoring importance of stability in life of traumatized children).  See also Adoption of Oren, 96 Mass. App. Ct. 842, 847 (2020), quoting Adoption of Irene, 54 Mass. App. Ct. 613, 617 (2002) ("[a] plan proposed by a parent is not entitled to any artificial weight as opposed to alternative plans").  The

_____

[11] The father does not challenge this finding as clearly erroneous.  His default proposal was adoption through recruitment, which, the judge stated in his decision, did not constitute a "sufficient adequate plan."  On appeal, the father limits his claim of error to his competing plan for Gia.

10

judge's findings reflect the fact that the framework proposed by the department was essentially the same as the one in which Gia was already thriving by the time of the trial.  Further, although Gia's preferences were not dispositive, Gia was in favor of the department's plan.

Conclusion.  So much of the appeal as relates to Qavi is dismissed as moot, and, to that same extent, the decree entered in the Juvenile Court terminating the father's parental rights to Qavi is vacated as moot.  The decree relating to Gia is affirmed.

So ordered.

By the Court (Massing, Hand & Smyth, JJ.[12]),

Paul Little

Clerk

Entered:  November 4, 2024.

---

[12] The panelists are listed in order of seniority.