NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-868

CARE AND PROTECTION OF HUNTER.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Juvenile Court judge determined that the father of Hunter was currently unfit to parent him and awarded custody of Hunter to his mother.  See G. L. c. 119, §§ 24, 26; G. L. c. 210, § 3. The father appeals, primarily arguing that the judge's subsidiary findings -- the "core" of the judge's unfitness determination -- were clearly erroneous.  We affirm.

Background.  We summarize the judge's findings of fact and conclusions of law, while reserving further details for discussion.  In June or July 2021, the mother moved to Massachusetts and into the father's home, where several of his family members also lived.  The home was filthy, smelt like marijuana, and had garbage littered throughout.  The family had seven dogs, whose feces and urine were all over the house, along

---

[1] A pseudonym.

with rodents, roaches, and bed bugs.  Subsequently, the house was condemned by the Medford Fire Department and the board of health of Medford in November 2022.

Throughout the mother and the father's relationship, the father assaulted the mother.  For instance, he slapped her in the face, bit her arm, pushed her down, punched her, and swore at her.  The father continued to assault the mother while she was pregnant.  The father's family members also abused the mother in the presence of the father, who did nothing or joined in the abuse.

Hunter was born on October 2, 2022.  In January 2023, the Department of Children and Families (the department) filed a care and protection petition for Hunter, alleging there was domestic violence and poor living conditions at the father's home.  After a temporary custody hearing on January 17, 2023, a judge ordered custody of Hunter to remain with the department. On February 20, 2024, the judge found the father currently unfit and awarded custody of Hunter to the mother.  The father appealed.

Discussion.  1.  The father's unfitness.  The father contends that the judge erred in finding, by clear and convincing evidence, that he is unfit to provide for the welfare and best interests of Hunter.  "Parental unfitness must be

2

determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). Subsidiary findings in care and protection cases must be proved by a fair preponderance of the evidence, and taken together, must then prove current parental fitness clearly and convincingly. See Custody of Eleanor, 414 Mass. 795, 799 (1993). The trial judge, "who hears the evidence, observes the parties, and is most familiar with the circumstances remains in the best position to make the judgment" as to parental fitness. Guardianship of Estelle, 70 Mass. App. Ct. 575, 579 (2007). The judge's subsidiary findings will not be disturbed unless they are clearly erroneous. See Adoption of Quentin, 424 Mass. 882, 886 (1997).

Here, the evidence was sufficient for the judge to conclude the father lacked parental fitness. Over the course of a seven-day trial, the judge heard testimony from four witnesses and twenty documents were admitted as exhibits. The judge carefully issued 146 detailed factual findings and thirty-three conclusions of law. The judge's subsidiary findings were amply supported by the evidence, and considered together, established

by clear and convincing evidence that the father was unfit.[2]  See

Adoption of Anton, 72 Mass. App. Ct. 667, 672-673 (2008).

Predominant among the judge's findings was the father's history

of domestic violence and the father's unsafe home environment

that placed Hunter at risk of neglect.

Domestic violence "within a family is highly relevant to a

judge's determination of parental unfitness."  Adoption of

Gillian, 63 Mass. App. Ct. 398, 404 n.6 (2005).  See Custody of

Vaughn, 422 Mass. 590, 599-600 (1996); Care & Protection of

Lillith, 61 Mass. App. Ct. 132, 139 (2004).

The father's history of domestic violence toward the mother

and his inability to protect her from abuse by his family

members was pervasive.  The judge found that the father

subjected the mother to verbal, emotional, and physical abuse,

including slapping her in the face; biting her arm; dragging her

across a room and pushing her down while she was pregnant;

smashing her phone; cursing at her; and, in response to the

---

[2] The father challenges three of the judge's factual findings as clearly erroneous.  Much of the father's arguments amounts to mere dissatisfaction with the judge's weighing of the evidence and her credibility determinations.  See Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).  For example, the judge was entitled to discredit the father's claim that he was the victim of domestic violence by the mother.  Thus, we discern no basis to disturb the judge's view of the evidence and conclude that substantial evidence supports the judge's findings.

father's sister slapping the mother, telling the mother she "deserved it." The judge also found that the father's family subjected the mother to abuse, including slapping her; giving her a black eye; throwing cold water in her face; pulling her hair; throwing a can at her; cursing at her; hitting her in the arm with a shoe; throwing a phone at her head; and punching and hitting her in the head and breaking her glasses. Finally, the mother witnessed the father's parents fight and push one another.

We discern no error in the judge's determination that, despite the father's participation in some of the services available to him,[3] including therapy and parenting classes, his failure to benefit from those services left him unfit to parent Hunter. See Adoption of Terrence, 57 Mass. App. Ct. 832, 835-836 (2003) (parent's mere participation in parenting programs, "without evidence of appreciable improvement in her ability to meet the needs of the child, does not undermine a finding of unfitness").

Although the father completed some tasks from his action plan, such as engaging in a mental health evaluation, he has not completed the necessary intake paperwork for a responsible

---

[3] Contrary to the father's argument, the judge did acknowledge the father's engagement in some services.

5

fatherhood program or a neurological evaluation. Nor has the father acknowledged his role as a perpetrator of domestic violence, thereby rendering him ineligible for the abuse education program part of his action plan. In sum, the father has failed to "substantially and meaningfully engage in domestic violence services." See Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019) (parent's inability to "benefit from classes required by her service plan is relevant to the determination of unfitness" [quotations and citation omitted]).

"Cleanliness of a home is [also] an appropriate factor for consideration" of parental fitness. Care and Protection of Inga, 36 Mass. App. Ct. 660, 665-666 (1994). See Care & Protection of Three Minors, 392 Mass. 704, 713 (1984). The judge found that the father's home was "filthy," "deplorable," and "unlivable"; and that it was filled with garbage, smelled like marijuana, and there were flies, rats, and feces and urine from seven dogs all over the house. Additionally, feces was observed around Hunter's playpen. Even once the father moved out of the condemned home, the cleanliness of his living situation was not fully addressed -- he brought a toy covered in feces to a visit with Hunter.

2. The mother's fitness. The father also challenges the judge's finding that the mother is parentally fit.[4] The record supports the judge's finding. The mother has since left the father and moved to Michigan where she has support from her family. In Michigan, the mother has been engaged in services, including a parenting class and individual therapy. A social worker in Michigan monitors the mother.

Conclusion. Based on the judge's subsidiary findings, which are abundantly supported by the evidence, we discern no error in the judge's determinations that the father is currently unfit to parent Hunter and that the mother is fit to assume parental responsibility.

Judgment affirmed.

By the Court (Meade, Desmond & D'Angelo, JJ.[5]),

Clerk

Entered: January 28, 2025.

---

[4] The father does not have standing to challenge the mother's fitness. Cf. Adoption of Paula, 420 Mass. 716, 722 n.8 (1995) (declining to address father's arguments regarding fitness of mother). Nonetheless, even if the father had standing, the judge had sufficient evidence to find that the mother was fit.

[5] The panelists are listed in order of seniority.