# Adoption of Gillian
(and a companion case[1]).

No. 04-P-1344.

Middlesex. February 11, 2005. - May 4, 2005.

Present: Beck, Berry, & Graham, JJ.

*Adoption,* Care and protection, Dispensing with parent's consent, Visitation rights. *Minor,* Care and protection, Custody, Adoption, Visitation rights. *Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption. *Evidence,* Child custody proceeding, Hearsay, Sexual conduct. *Due Process of Law,* Child custody proceeding. *Practice, Civil,* Continuance, Relief from judgment.

In a proceeding to dispense with parents' consent to the adoption of their two children, the record amply supported the judge's conclusions that neither parent had ever been able to meet the children's needs and, because that was unlikely to change in the foreseeable future, that the best interests of the children would be served by terminating the parents' rights. [403-405]

In a proceeding to dispense with parents' consent to the adoption of their two children, the entry of a permanent guardianship order with respect to one child, under a separate petition, did not render the care and protection issues moot as to that child, where the language of the care and protection statute, G. L. c. 119, § 26, as amended by St. 1999, c. 3, §§ 8 and 9, permitted the judge to issue more than one dispositional order in such a proceeding. [405-406]

In a proceeding to dispense with a father's consent to the adoption of his child, the judge's admission in evidence of the child's out-of-court statements that he was sexually molested by his father, even if erroneous, was not prejudicial, where the judge specifically noted in her findings that the allegations would not have to be believed for the father's rights to be terminated. [406-408]

In a proceeding to dispense with parents' consent to the adoption of their children, the parents, by failing to raise issues regarding posttermination visitation in a timely manner, waived their right to contest those issues on appeal. [408-409]

In a proceeding to dispense with parents' consent to the adoption of their children, the record did not support a claim that the judge abused her discretion by approving an adoption plan for one child without holding an evidentiary hearing. [409-410]

In the circumstances of a proceeding to dispense with parents' consent to the

[1]Adoption of Stephen. All the children's names in this opinion are pseudonyms.

adoption of their children, the judge did not abuse her discretion either in declining to provide the parents with an evidentiary hearing on their motion for relief from judgment or in denying such relief. [410-412]

PETITIONS filed in the Middlesex County Division of the Juvenile Court Department on September 28, 2000, and August 21, 2001.

The cases were heard by *Margaret S. Fearey*, J., and posttrial motions were heard by her.

*Deborah Sirotkin Butler* for the father.

*Michael F. Kilkelly* for the mother.

*Brian Pariser* for Department of Social Services.

*Mary L. Gallant* for the daughter.

*Amy E. Valletta* for the son.

GRAHAM, J. The parents appeal from decrees dispensing with their consent to the adoption of their twelve year old daughter Gillian and their nine year old son Stephen pursuant to G. L. c. 210, § 3, and from the denial of their postjudgment motions for relief.

In her appeal, the mother chiefly challenges the ultimate finding of her unfitness as unsupported by the requisite quantum of clear and convincing evidence. The father's argument on appeal is primarily that termination of his and the mother's parental rights are not in the best interests of the children. They both contend that entry of a permanent guardianship with respect to Gillian rendered the care and protection issues, as to her, moot. The parents also allege that the judge committed error by (1) admitting in evidence certain hearsay statements of Stephen accusing the father of sexual molestation; (2) failing to provide for posttermination visitation; and (3) failing to provide them with an evidentiary hearing relative to their motion for relief from judgment. We affirm.

*Procedural and factual background.* We recount the relevant facts, reserving certain details for our discussion. The Department of Social Services (department) filed a care and protection petition on September 28, 2000, alleging neglect of Gillian, who was born on August 18, 1992, and Stephen, who was born on April 1, 1995, as well as another sibling, Jake, who was born

in 1990. At that point, the department already had a long history of involvement with the parents.[2] The mother, who was born in 1967, was abused physically and emotionally by alcoholic parents and had been in therapy for eleven years with the same therapist. As a child, she had learning disabilities and was placed in special education classes. She currently receives Social Security disability benefits for depression, anxiety, epilepsy, and posttraumatic stress disorder.

The mother exposed the children to a lengthy period of domestic violence, demonstrating an inability to protect the children from the father's abuse. She also physically abused the children. Although the mother participated in parenting classes provided by the department, and was assisted by a parenting aide, she was unable to internalize the lessons she learned.

The father, who was born in 1968, currently receives Social Security disability benefits for depression. He developed behavioral problems at age five after his father died in an industrial accident, and attended a residential school for children with behavioral problems, where he lived in a group home between 1977 and 1981. The father had been physically and emotionally abusive to the mother and the children before they were taken into custody by the department. The record discloses several acts of domestic violence by the father against the mother and the children, including incidents in which he left bruises on them by kicking and hitting them in the legs and head. These actions led to several G. L. c. 209A orders being issued against him.

Despite her abusive treatment, Gillian is a bright child with mostly minor behavioral issues. At the time of the trial, Gillian had been living with her aunt since the spring of 2001 and expressed a desire to remain there. Stephen suffers from attention deficit and hyperactivity disorder and, as a result of his abusive treatment, is emotionally fragile. In the summer of 2001, Stephen was placed at the Franciscans Children's Hospital for psychological evaluation and treatment. At the time of trial, he had been placed in a highly structured foster home where he

---

[2]The department was involved even before the birth of the parents' first child, Sam, who was born on October 30, 1988. Sam is in the guardianship of the maternal grandmother.

was doing well. He requires extensive special education services due to his behavioral problems.

During the spring of 2001, the children's teachers complained about their behavior at school. When the children were picked up to visit the parents, they often yelled at each other, kicked the seats of the car, and threw objects. At other times they engaged in name calling, screaming, and swearing. The children were generally out of control during their visits with the mother, but well behaved during their visits with the father and well behaved for their paternal grandmother.

On the date the petition was filed, the judge awarded temporary custody of all three children[3] to the department. The parents waived their rights to a seventy-two hour hearing on October 2, 2000. On August 21, 2001, the children's paternal aunt filed a petition pursuant to G. L. c. 201, § 1, seeking appointment as Gillian's guardian. Temporary custody of Gillian was awarded to her under the supervision of the department.

A joint trial on the guardianship care and protection petitions ended on February 14, 2002, and on May 3, 2002, the judge allowed the aunt's petition for permanent guardianship of Gillian. She also stated the following: "I have enough evidence that's credible and clear and convincing to terminate parental rights with regard to both Gillian and Stephen. I am not going to enter that decree today. However, I am going to note on the record that there is sufficient evidence." She made it clear that, while she had considered terminating parental rights in regard to Gillian, she had decided not to do so at that point. The judge noted that, although her usual practice was to dismiss the care and protection petition after the appointment of a permanent guardian, she chose not to do so in this matter "because there was an ongoing issue of law that was not resolved by the guardianship, to wit, the termination of parental rights." It is unclear whether there was a final judgment as to custody in the care and protection case at that point. See note 4, *infra*.

---

[3]The case regarding Jake was resolved prior to the trial regarding Gillian and Stephen. On February 27, 2001, a guardianship petition was filed for Jake and a permanent guardianship of Jake was granted to his paternal grandmother. The care and protection petition relative to Jake was dismissed in the spring of 2001 and is not under appeal.

On December 20, 2002, the judge issued written findings of fact and conclusions of law. She found the parents unfit, committed Gillian and Stephen to the custody of the department, and terminated the mother's and father's parental rights with respect to Gillian. The judge further determined that there was sufficient evidence to terminate parental rights as to Stephen. She declined to do so, however, because the department's permanent plan for Stephen needed additional work. The decrees as to Gillian were appealed by the mother on January 2, 2003, and by the father on January 11, 2003.

On May 22, 2003, the judge, satisfied with the department's permanent plan for Stephen, terminated the parental rights of both parents with respect to Stephen. The parents filed notices of appeal that same day. Thereafter, on diverse dates, the parents filed the following motions: a motion to dismiss the care and protection petition relative to Gillian; a motion to reopen the evidence; a motion for posttermination visitation; a motion for stay of judgment; and a motion for relief from judgment. These motions were all denied by the judge in her January 26, 2004, decision.[4]

---

[4]In her memorandum of decision, the judge ruled sua sponte that the parents' appeals were untimely as to the "adjudication and permanent custody orders" and findings that the parents were unfit and that the children were in need of care and protection. She reasoned that the entry of those items on the docket on May 3, 2002, precluded the parents from contesting them in their later appeals from the decrees terminating their parental rights on December 20, 2002, as to Gillian, and on May 22, 2003, as to Stephen. Given the ambiguous nature of the judge's in-court statements and the docket entries, it would not be unreasonable to conclude that there was no appealable judgment as of May 3, 2002. *Adoption of Carlos*, 413 Mass. 339, 344-346 (1992); *Adoption of Karla*, 46 Mass. App. Ct. 64, 66 (1998). Even if there was an appealable judgment on May 3, 2002, as to permanent custody, the parents here were not required to appeal at that point to preserve their rights to appeal the finding of unfitness when their parental rights were terminated.

As our courts have repeatedly stated, determinations as to unfitness and to the best interests of the child "are not separate and distinct but cognate and connected." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975). *Adoption of Nancy*, 443 Mass. at 515. In *Nancy*, *supra* at 516, the court determined that separate findings as to the best interests of the child were not required where the findings as to unfitness were detailed and specific, which demonstrated that the judge had paid close attention to the evidence and the G. L. c. 210, § 3(c), factors. Here, as well, the finding of unfitness cannot be separated

*Discussion.* 1. *Termination of parental rights.* In termination proceedings, judges must decide whether a parent is capable of assuming the duties and responsibilities expected of a parent and if the termination of parental rights would be in the child's best interests.[5] *Adoption of Mary*, 414 Mass. 705, 710 (1993). The judge is required to "articulate specific and detailed findings in support of a conclusion that termination is appropriate, demonstrating that [the judge] has given the evidence close attention." *Adoption of Nancy*, 443 Mass. 512, 514-515 (2005). See *Adoption of Frederick*, 405 Mass. 1, 5 (1989). Such detailed findings are required because the termination of parental rights is an "extreme step." *Ibid.*, quoting from *Petition of Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984). Subsidiary findings must be supported by a preponderance of the evidence, *Care & Protection of Laura*, 414 Mass. 788, 793 (1993), and unless those findings are clearly erroneous, they will not be disturbed. *Custody of Eleanor*, 414 Mass. 795, 799 (1993). "We review the judge's findings with substantial deference, recognizing her discretion to evaluate a witness's credibility and to weigh the evidence." *Adoption of Nancy*, *supra* at 515.

The standard for termination of parental rights involves a two-step analysis: first, a determination that a parent is unfit, and second, a determination that termination of the parental rights is in the best interests of the child. *Adoption of Ramona*,

from the findings as to the best interests of the children. In addition, the parents did not have the same incentive to appeal from any such prior adjudication, from which, for example, they could seek review and redetermination, G. L. c. 119, § 26, as they did from the termination of their parental rights. See *Adoption of Frederick*, 405 Mass. 1, 6 (1989).

[5]"Unless the [parents'] legal relation to [their] children is terminated, [they] would be entitled to receive notice of all proceedings affecting the welfare of the children, to petition every six months 'for review and redetermination' of their current needs, and to participate in an annual permanency planning hearing. G. L. c. 119, §§ 26, 29B." *Adoption of Willow*, 433 Mass. 636, 647 n.11 (2001). The department must file a permanency plan with the committing court prior to the hearing which shall address the following: "whether and, if applicable, when (1) the child will be returned to the parent; (2) the child will be placed for adoption and the steps the department shall take to free the child for adoption; (3) the child will be referred for legal guardianship; or (4) the child will be placed in another planned permanent living arrangement." *Id.* at 639 n.4. See G. L. c. 119, §§ 26, 29B.

61 Mass. App. Ct. 260, 265 (2004). The analysis is similar, but "reflect[s] different degrees of emphasis on the same factors." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975). The "critical inquiry" is the finding of parental unfitness by clear and convincing evidence. *Adoption of Frederick, supra* at 4.

Once the judge determines that a parent is unfit, she must then ascertain "whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child." *Adoption of Nancy*, 443 Mass. at 515. In deciding whether the best interests of the child will be served by issuing a decree terminating parental rights, a judge "shall consider the ability, capacity, fitness and readiness of the child's parents . . . and shall also consider the plan proposed by the department or other agency initiating the petition." G. L. 210, § 3(c). Both parents argue that there is no evidence in the record that termination of their parental rights is in the best interests of either Gillian or Stephen, especially since Gillian has been placed with a family member. The parents have challenged a mere handful of the trial judge's ninety-three subsidiary findings as being unsupported by the record. Moreover, some of the challenges relate to matters that are inconsequential. For example, the parents challenge finding fifteen, which states that the mother secured five G. L. c. 209A orders against the father when in fact she obtained only three; the other two were obtained by the grandmother.

We need not review all of the parents' shortcomings and misdeeds set forth in detail in the judge's findings. The trial evidence focused on the severe abuse and neglect suffered by the children before they were placed in the care of the department.[6] The father's hostile and intimidating conduct toward the mother and the children, his acts of violence, and his other shortcomings have resulted in an inability to acknowledge and address the physical, emotional, and behavioral problems

---

[6]Violence within a family is highly relevant to a judge's determination of parental unfitness and the best interests of the children. As such, a judge must consider issues of domestic violence and its effect upon the children as well as a parent's fitness. See *Care & Protection of Lillith*, 61 Mass. App. Ct. 132, 139 (2004).

and the anxiety of the children. The mother lacks the parenting skills necessary to protect the children from abuse and also lacks the basic skills needed to provide the children with a home environment conducive to appropriate child rearing.

The judge concluded that neither parent had ever been able to meet the children's needs and, because that was unlikely to change in the foreseeable future, the best interests of the children would be served by terminating the mother's and father's parental rights. The record amply supports the judge's conclusion.

2. *Termination of parental rights and permanent guardianship.* The parents argue that the entry of a permanent guardianship on May 3, 2002, for Gillian brought the care and protection petition to conclusion. They contend that entry of the permanent guardianship rendered the care and protection issues moot and that, for jurisdiction over the same child to be regained, the department must file a new petition for care and protection. We do not agree that the judge's appointment of a permanent guardianship under a separate petition was, in effect, a resolution of the care and protection petition.

The appointment of the aunt on May 3, 2002, as Gillian's permanent guardian was the final judgment relative to the guardianship petition. However, that action did not dictate that the care and protection case be dismissed. As the judge noted, *supra* at 401, the care and protection petition had not been finally resolved. "[T]ermination need not be a prerequisite to a permanency plan." *Adoption of Nancy*, 443 Mass. at 518. The language of the care and protection statute permits the judge to issue more than one dispositional order, in addition to or instead of granting custody to the department, including allowing the child to remain in the custody of the guardian and terminating parental rights. Under the statute, the judge may make

"any . . . appropriate order with reference to the care and custody of the child as may be in his best interest including, but not limited to, *any one or more* [emphasis supplied] of the following: (1) It may permit the child to remain with his parents, guardian, or other custodian. . . . (4) It may enter an order to dispense with the need for

consent of any person named in section 2 of chapter 210, to the adoption, custody, guardianship or other disposition of the child named therein . . . [in accordance with] the standards set forth in section 3 of . . . chapter 210."

G. L. c. 119, § 26, as amended by St. 1999, c. 3, §§ 8, 9. The judge here made "appropriate order[s]" with respect to Gillian.

Earlier amendments made by the Legislature to G. L. c. 119, § 26, inserted by St. 1998, c. 14, § 1, and G. L. c. 210, § 3, inserted by St. 1998, c. 14, §§ 2, 3, had extended a judge's authority to enter an order dispensing with the need for a parent's consent not only to a child's adoption, but "to any legal proceeding affecting a child's custody, guardianship or other disposition." *Adoption of Willow*, 433 Mass. 636, 645 (2001). Prior to the amendments, a decree allowing a petition of the department to terminate the parental rights to consent to the adoption of the child named in the petition terminated a parent's right of consent only with respect to the adoption of the child. *Ibid.* If, however, the department's plan for a child changed from adoption during the course of or after the trial, the department was required to file a separate petition. *Id.* at 645-646. See *Adoption of Reid*, 39 Mass. App. Ct. 338, 343 (1995). The current statute provides for a greater range of placement options and for multiple "orders," and the department is no longer required to retry a parent's unfitness multiple times. See *Adoption of Nancy*, 443 Mass. at 517; *Adoption of Willow*, *supra* at 646.

The Legislature surely did not contemplate that, when a permanent guardian is appointed after a joint trial on the guardianship and the termination of parental rights, the department would be required to begin the process anew. Compare *Adoption of Willow*, 433 Mass. at 647-648. The best interests of the children would not be served by requiring the department to "initiate multiple, repetitious litigation," which would delay the eventual adoption or other disposition of the children into a proper environment. *Adoption of Helen*, 429 Mass. 856, 862 (1999).

3. *Evidentiary matters.* The father contends that the judge failed to comply with the statutory requirements of G. L. c. 233,

§ 82,[7] before admitting in evidence Stephen's out-of-court statements that he was sexually molested by the father. He alleges that the evidence failed to establish that Stephen was unavailable and that his statements of sexual abuse were reliable. However, prior to the admission of Stephen's allegation of sexual contact by the father, the judge held a separate hearing. She heard the testimony of Dr. Roberta Conant,[8] a psychologist with expertise in the treatment of psychological trauma and sexual abuse, that Stephen would suffer psychological harm if forced to testify at the trial and was, therefore, unavailable. She also heard testimony regarding sexualized behavior that Stephen exhibited. In court after trial, the judge adopted the reasons set forth in the department's memorandum for finding Stephen unavailable and for allowing in evidence the statements made to three department witnesses. She stated in court, and noted in her decision, that a separate appendix attached to her decision would address her findings. There is no such appendix in the record. In her decision after trial, she included the statements

---

[7]General Laws c. 233, § 82, states as follows: "(a) the out-of-court statements of a child under the age of ten describing any act of sexual contact performed on or with the child, the circumstances under which it occurred, or which identifies the perpetrator shall be admissible as substantive evidence in any civil proceeding, . . . provided, however, that such statement is offered as evidence of a material fact and is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; the person to whom such statement was made or who heard the child make such statement testifies; the judge finds pursuant to subsection (b) that the child is unavailable as a witness; and the judge finds pursuant to subsection (c) that such statement is reliable.

"(b) The proponent of such statement shall demonstrate a diligent and good faith effort to produce the child and shall bear the burden of showing unavailability. A finding of unavailability shall be supported by specific findings on the record, describing facts with particularity, demonstrating that: . . .

"(5) the court finds, based upon expert testimony from a treating psychiatrist, psychologist, or clinician, that testifying would be likely to cause severe psychological or emotional trauma to the child;

"(c) If a finding of unavailability is made, the out-of-court statement shall be admitted if the judge further [finds] . . . after holding a separate hearing and, where practicable and where not inconsistent with the best interests of the child, meeting with the child, that such statement was made under circumstances inherently demonstrating a special guarantee of reliability."

[8]Dr. Conant was part of the team that evaluated and treated Stephen during his stay at Franciscans Children's Hospital.

and found that they were reliable based on the consistent repetition of them by Stephen.

However, even if the admission of Stephen's statements was erroneous, it was not prejudicial. The judge included the statements in her findings but specifically noted that "it [the allegation of sexual abuse by the father] would not have to be believed for parental rights to be terminated." Thus, there is no need to address the inadequacies in the record.

4. *Other issues.* We next address the remaining four issues raised by the parents in their appeal.

a. *Parents' visitation.* The parents claim that the judge erred in failing to provide for posttermination visitation between themselves and the children and visitation between the siblings. The judge was correct in denying the parents' requests for posttermination visits made after the decrees had entered. The parents had the opportunity to raise and preserve the issue prior to the termination of their parental rights, but failed to do so. The issue is, therefore, waived. See *Adoption of Mary*, 414 Mass. 705, 712 (1993).[9] They lacked standing once their parental rights were terminated. *Adoption of Helen, supra* at 856 (parent's right to litigate custody issues related to the child ends when parental rights terminated). Therefore, authority to determine visits, based upon the needs of the children, has been left, appropriately, with the guardian.

b. *Sibling visitation.* The parents did not raise the issue of sibling visitation at trial, and thus, that issue is waived. See *Adoption of Mary*, 414 Mass. at 712. The children, however, do have recourse to the courts to seek visits with their siblings. See *Adoption of Pierce*, 58 Mass. App. Ct. 342, 347-348 (2003). General Laws c. 119, § 26, provides for sibling visitation for a child who is in the care of the department with his or her siblings when it is "reasonable and practical" and in the "best interests of the child." The statute also provides for visitation if

---

[9]"As a general matter, issues not raised by a losing party in the trial court are not addressed on appeal, absent exceptional circumstances." *Adoption of Mary, supra,* quoting from *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption,* 392 Mass. 696, 697 (1984). Given the substantial evidence of the parents' unfitness and their opportunity to have preserved the issue below, we conclude it was not an abuse of discretion to consider the matter waived.

the siblings are subsequently separated through other placements. *Ibid.* Periodic reviews of such visitation are provided for children, such as Stephen, who are in the care of the department, and children who are over twelve, such as Gillian, may request visitation with their siblings. *Ibid.* The trial judge did not initially order visits between the siblings, but subsequently, such visits have been resumed.[10]

c. *Lack of evidentiary hearing on the adoption plan for Stephen.* We also find the parents' argument that the judge erred in approving the adoption plan for Stephen without holding an evidentiary hearing to be without merit. On December 20, 2002, the judge issued findings of fact and conclusions of law in which she reaffirmed that both parents were unfit and, further, that she had reviewed sufficient evidence upon which to terminate their parental rights with respect to Stephen. However, she declined to do so because the department failed to produce sufficient evidence of its permanent plan for him. The department filed a plan in April, 2003, and the parents filed objections with the court.

On April 25, 2003, the judge set the matter for hearing on May 22, 2003, and notified the parties that she would hear evidence on that date. The parents, however, were not prepared to proceed on the day of the hearing and requested a continuance. Their request was denied by the judge, who expressed concern with the length of time that had passed without resolving the matter as to Stephen, especially in view of the legislative policy for speedy resolution of such matters. The decision on whether to continue any judicial proceeding is

---

[10]On February 17, 2005, following oral argument before this court, the matter of sibling visitation was heard before the trial judge. The department and Stephen stipulated to the following: "(1) Visits between [Stephen] and his sibling have been discussed and considered on an on-going basis between the Department and the child's counsel. (2) The Department scheduled and supervised a visit for [Stephen] with his sibling on 2/11/05. (3) It is the Department's intention to continue to schedule visits between [Stephen] and his sibling as long as he desires such visits and they are deemed to be in his best interest. (4) The Department will consult with [Stephen], his counsel, his therapist and his preadoptive Father in determining the length and frequency of future sibling visits. (5) This Court has been and will continue to review the sibling visits at the permanency hearings scheduled in this matter. (6) Child's counsel will bring the issue of sibling visits before the Court for further review if needed."

a matter entrusted to the sound discretion of the judge, and the judge's decision will be upheld absent an abuse of that discretion. See *Care & Protection of Quinn*, 54 Mass. App. Ct. 117, 120 (2002). The record does not support a claim that the judge abused her discretion on this matter.

d. *Motion for relief from judgment.* Although the Massachusetts Rules of Civil Procedure do not apply in termination of parental rights case, we proceed by analogy to Mass.R.Civ.P. 60(b)(6), 365 Mass. 828 (1974). *Adoption of Reid*, 39 Mass. App. Ct. at 341. After the judge terminated parental rights with respect to Stephen on May 22, 2003, the parents filed motions to reopen the evidence[11] and for relief from judgment. Both motions were denied by the judge without an evidentiary hearing. It is well-established that while a judge may hold an evidentiary hearing regarding postjudgment motions in a termination of parental rights case, she is not required to do so. *Adoption of Marc*, 49 Mass. App. Ct. 798, 800 (2000). We discern no abuse of the judge's discretion here.

Finally, with regard to the merits of the motion for relief from judgment, the judge explicitly detailed her reasons for denying it. The mother, by affidavit, supported her request with facts that we summarize as follows. On July 26, 2002, less than three months after the entry of the permanent guardianship, the aunt returned Gillian to live with the mother. Apparently the guardian's companion had become abusive toward Gillian. Neither the guardian nor the mother informed the department, the judge, or Gillian's teachers of that development. Gillian continued to live with the mother until May, 2003, when the mother sent Gillian to live with her paternal grandmother. The mother contends that she has (1) maintained custody of Gillian for ten months without problems, (2) been in compliance with her service plan, (3) learned a great deal from her parenting classes, and (4) maintained a restraining order against her husband. These facts, she contends, present a sufficient basis to warrant relief from judgment.

---

[11]The parents did not file a motion for new trial within ten days of entry of the decree regarding Stephen on May 22, 2003, pursuant to Mass.R.Civ.P. 59, 365 Mass. 827 (1974). Instead they filed a motion to reopen on June 24, 2003, more than a year after the entry of the decree. That motion was untimely.

However, the affidavit also disclosed that Gillian informed the mother of incidents of domestic violence between the guardian and her boyfriend, incidents that were not reported to the department by the mother until she filed the motion for relief from judgment. If she had informed the department sooner, it would have been clear that Gillian was no longer living with her guardian but, rather, was living with her mother. In addition, Gillian was having problems in school. The mother was aware of the problems, but again did not report them to the school because she did not want it known that Gillian was living with her. Though the mother stated that she maintained a restraining order against the father, there was no indication that she enforced that order. Indeed, while Gillian was living with her mother, there were indications that the father was still a presence in the mother's and, thus, Gillian's life. The judge found that, rather than addressing the problems that arose with Gillian, the mother and guardian acted "to conceal or misrepresent in order to avoid scrutiny." She concluded that "the parental behaviour reflected in the Affidavit is the very kind of behaviour that contributed to the original adjudication, permanent custody order and guardianship. It does not present a sufficient basis, even if proven at an evidentiary hearing, to 'warrant relief' from judgement."

A judge's denial of such a rule 60(b) motion is within her discretion and is entitled to great deference by a reviewing court. *Adoption of Marc*, 49 Mass. App. Ct. at 800-801. It will not be reversed on appeal except on a showing, by clear and convincing evidence, that the judge abused her discretion.

The judge confronted and resolved the relevant factors to be considered when ruling on a motion under rule 60(b)(6): whether the circumstances were so extraordinary as to warrant relief; whether the parents presented a "meritorious" contention; and whether the "substantial rights" of other parties would be adversely affected by granting the motion. *Parrell* v. *Keenan*, 389 Mass. 809, 815 (1983). See *Adoption of Reid*, 39 Mass. App. Ct. at 343.

The judge expressly concluded that the mother's affidavit highlighted many of the issues amounting to parental unfitness present at the trial and that the affidavit failed to establish that

there was any sufficient change in the mother's circumstances in light of the extensive evidence presented at trial. In her decision, the judge carefully distinguished the cases cited by the parents in support of their motion. See *Adoption of Rhona*, 57 Mass. App. Ct. 479 (2003); *Adoption of Theodore*, 36 Mass. App. Ct. 355 (1994). In those cases, the original findings focused on a particular failing of the parent that appeared to have been remedied in the intervening years following the decrees. For example, in *Rhona, supra* at 482-486, the judge's primary reason for dispensing with consent to adoption was the mother's persistent drug use; however, during the trial and thereafter, the mother remained drug free, in total for a period of six years, a major change of circumstances. In *Theodore, supra* at 356-357, the only basis for dispensing with the mother's consent was her inability to break off her relationship with an abusive husband and to protect her child. The mother there later obtained a divorce and a rehearing was warranted. *Id.* at 357-358. This case is distinguishable in that the termination of parental rights was not based on any one failing of the mother, but rather numerous failings, none of which have substantially changed since trial. There was no abuse of discretion.

*Decrees affirmed.*

*Orders denying motion for relief
from judgment affirmed.*