NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-295

ADOPTION OF UM.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a Juvenile Court judge found that the mother was unfit to parent her youngest child and ordered entry of a decree terminating her parental rights to that child.  The mother appealed, and she also filed a motion to stay the appeal and for leave to file a motion for relief from judgment pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).  That motion was denied by a single justice of this court.  Before us is the mother's consolidated appeal from the single justice order and the decree.  On appeal, the mother contends that (1) the trial judge abused her discretion in denying the mother's motion to continue the trial so that she could obtain additional evidence of her fitness, (2) there was not clear and convincing evidence

---

[1] A pseudonym.

that her unfitness would persist indefinitely, and (3) denying the motion to stay was an abuse of discretion. We affirm.

Background. We set forth the facts found by the judge after trial, saving some facts for later discussion.

The mother has one child with the father, and that child is the subject of this appeal.[2] The mother has two older children with different fathers. The child who is the subject of this appeal was removed from the mother's custody after birth by the Department of Children and Families (DCF) and was two years old at the time of trial. The mother is unemployed and relies for income on government assistance. She currently lives with her mother and has a history of housing instability and homelessness, primarily due to her lack of employment and her substance use. The mother has a long history of using alcohol, marijuana, cocaine, and opiates. She also has an extensive criminal history, including charges of assault and battery on a family or household member and child endangerment by operating a motor vehicle while under the influence of alcohol. She has been the named defendant on two harassment prevention orders issued pursuant to G. L. c. 258E. The mother has experienced extensive domestic violence in her intimate relationships,

---

[2] The judge also terminated the parental rights of the father. Neither the father nor the child appealed; in her brief, the child requests the decrees be affirmed.

including with the fathers of her three children. During her relationship with Um's father, and while the mother was pregnant with Um, the father provided the mother with drugs and alcohol and was physically and mentally abusive to her. After the mother's relationship with the father ended, she continued to have intimate relationships marked with domestic violence. The judge found that during her testimony the mother was not truthful or insightful about her substance use or violent relationships.

The mother has been the subject of numerous reports under G. L. c. 119, § 51A (51A reports), and investigations under G. L. c. 119, § 51B, involving allegations of neglect and abuse of her two older children. These investigations resulted in DCF filing a care and protection petition and removing them from her care.[3] In March 2022, DCF received a 51A report alleging neglect of the child who is the subject of this appeal, due to the mother using alcohol, cocaine, and marijuana during pregnancy and not receiving prenatal care. After the allegations were supported, a case was opened for Um and incorporated into the open care and protection.[4]

_____

[3] In June 2020, DCF removed the two older children from the mother's care after she hit nine vehicles while driving intoxicated with one of the children in the car.

[4] In March 2023, the mother stipulated to the termination of her parental rights to the two older children, as did the father

Um has never lived with the mother or had any unsupervised visits with her.  She remains in a kinship placement with her preadoptive resource.  The mother's termination of parental rights trial occurred in August and September 2024; after evaluating the evidence, on October 4, 2024, the judge granted custody of the child to DCF and ordered entry of a decree terminating the mother's parental rights.  The judge found by clear and convincing evidence that the mother "is currently unfit to further the interests and welfare of [the child] and that her unfitness will continue for the indefinite future to a near certitude."

Discussion.  1.  Denial of motion to continue.  The mother contends that the judge abused her discretion by denying the mother's motion to continue her termination of parental rights trial so that she could provide certified methadone treatment records to document her sobriety.  We are not persuaded.

On August 9, 2024, after both DCF and the child rested, the mother's counsel stated that he might, "on the next date," submit in evidence documents that would be authenticated by a live witness or by agreement.  The judge continued the trial

_____

of the oldest child with respect to his rights to her.  Pursuant to that stipulation, the judge ordered entry of decrees terminating the mother's parental rights as to the older children in April 2023, and the mother waived her right to appeal from those decrees.

4

until August 20, 2024.  On that date, the mother moved to submit a letter from her methadone treatment provider regarding her attendance and four toxicology screens for May, June, and July 2024.  DCF objected because the records were not in admissible form pursuant to G. L. c. 233, § 79G.  While stating that the "timing of this is concerning, especially given the fact that this case has been substantially delayed by different requests by different parties for continuances," the judge acknowledged that the issue of the mother's participation in treatment was "highly relevant."  After the mother suggested that she could likely secure the records in admissible form in seven days, the judge granted her a two-week continuance, but warned that "if those records aren't produced in certified form in two weeks, the evidence is closed and there'll be no further continuances." At the next trial date on September 4, 2024, the mother did not have the certified records and requested an additional continuance "for purposes of obtaining those records," which the judge denied.

"The decision on whether to continue any judicial proceeding is a matter entrusted to the sound discretion of the judge, and the judge's decision will be upheld absent an abuse of that discretion."  Adoption of Gillian, 63 Mass. App. Ct. 398, 409-410 (2005).  We reverse the decision to deny a continuance only where we find that "the judge made a clear

5

error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." Vazquez Diaz v. Commonwealth, 487 Mass. 336, 345 (2021), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The judge did not abuse her discretion in denying the mother's request for an additional continuance. "Speedy resolution of cases involving issues of custody or adoption is desirable," Care & Protection of Quinn, 54 Mass. App. Ct. 117, 122 (2002), quoting Adoption of Emily, 25 Mass. App. Ct. 579, 581 (1988), and a judge may consider "[o]ther interests, specifically the paramount interests of the children involved," in determining whether a requested continuance should be allowed. Care & Protection of Quinn, supra. By the time the mother requested the additional continuance, the case had been pending for over two years, and the trial had been postponed multiple times. The record does not clearly show that trial counsel made diligent efforts to obtain properly certified records from the mother's treatment facility during the trial, either before DCF and the child rested their cases or during the two-week continuance granted for this purpose. Counsel acknowledged that he obtained a necessary release from his client only on the day he requested the additional continuance. In any event, we discern no prejudice stemming from the mother's

failure to submit the four toxicology screens in evidence.  In denying the continuance request, the judge took "note of mother's testimony, which outlines her efforts that she's made in treatment . . ., which was seven months clean at the time of her testimony."  The judge acknowledged in her decision that the mother had consistently engaged in methadone maintenance since 2024, but she concluded that such "evidence of recent improvements" had to be considered "within the context of earlier and continuing deficits."[5]

2.  <u>Unfitness and termination of parental rights</u>.  The mother also argues that the judge clearly erred in finding that the mother is not currently fit to care for the child and that her unfitness is likely to persist into the foreseeable future. "In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the

---

[5] For similar reasons, we affirm the single justice's order denying the mother's motion to stay this appeal and for leave to file in the Juvenile Court a motion for relief from judgment pursuant to rule 60 (b).  The toxicology screens were not "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial," rule 60 (b) (2), but rather records that the mother knew about during trial but failed to introduce in admissible form.  Nor did the exclusion of these records violate the mother's rights to due process, where the judge considered the mother's recent methadone treatment in her decision.

legal relation between parent and child" (citation omitted).
Adoption of Patty, 489 Mass. 630, 637 (2022). The judge must decide "both whether the parent is currently unfit and whether, 'on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary.'" Adoption of Ilona, 459 Mass. 53, 59 (2011), quoting Adoption of Carlos, 413 Mass. 339, 350 (1992). "[A] parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period." Adoption of Ilona, supra at 60. "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Id. at 59.

The mother does not contest the judge's findings, but rather argues that the judge failed to give adequate consideration to her "recovery trajectory" at the time of trial. We disagree. The judge found that the mother is incapable of protecting the child from future abuse and neglect due to several factors, including her substance use, history of domestic violence, criminal history, and poor decision-making. Although DCF met its obligation to make reasonable efforts to place the child in the mother's care, the mother failed to maintain her sobriety, resisted services, failed to complete

8

action plan tasks,[6] and was dishonest with DCF about her circumstances and substance use.  The mother abandoned substance use treatment against medical advice and only engaged in therapeutic services, anonymous support groups, methadone maintenance, and psychiatry on a consistent basis after she was involuntarily committed to a hospital by her probation officer.

"Even where a parent has participated in programs and services and demonstrated some improvement, we rely on the trial judge to weigh the evidence in order to determine whether there is a sufficient likelihood that the parent's unfitness is temporary."  Adoption of Ilona, 459 Mass. at 59-60.  Here, the judge concluded that, despite the mother's recent participation in these services, she derived no tangible benefit that aided her parenting skills or granted her insight into how her choices have affected or could affect the child.  The judge "continue[d] to be concerned with Mother's ability to place [the child's]

---

[6] In April 2022, DCF provided the mother with an updated action plan that had eight tasks for her to complete, including meeting with DCF, refraining from substance use, participating in substance use treatment and demonstrating sobriety, participating in individual counselling, attending court and meetings, and participating in supervised visits with her children.  In November 2022, DCF provided an updated action plan, which required the mother to also attend a parenting class, discuss with her providers how substance use impacts children and parenting, and provide proof of steady employment, income, and housing.  In July 2023, the action plan was updated again and required the mother to complete a psychological evaluation and information release.

needs above Mother's own desires," finding she had made "little, if any, genuine effort to remedy the conditions which placed the child in harmful and neglectful circumstances."  See Adoption of Jacques, 82 Mass. App. Ct. 601, 608 (2012) (judge is entitled to consider evidence of recent improvements within context of earlier and continuing deficits).

Conclusion.  We conclude that the judge had before her ample clear and convincing evidence on which to base her findings that the mother was unfit to parent the child, that her unfitness as a parent was likely to continue, and that

termination of her parental rights was in the child's best interests.[7]

Decrees affirmed.

Order of the single justice affirmed.

By the Court (Vuono, Desmond, & Toone, JJ.[8]),

_Paul Little_

Clerk

Entered: October 20, 2025.

---

[7] In a reply brief, the mother identifies eight "Additional grounds" for vacating or reversing the decree as to her, which were not argued in her principal brief and so we decline to address them. Tedeschi-Freij v. Percy Law Group, P.C., 99 Mass. App. Ct. 772, 781 (2021), and cases cited.

[8] The panelists are listed in order of seniority.

11