NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-725

ADOPTION OF VIOLA.[1]


MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On appeal from a decree entered in the Juvenile Court terminating his parental rights, the father challenges the trial judge's finding that he is unfit and the termination of his parental rights.[2]  We affirm.

Background.  We summarize the trial judge's findings of fact, reserving certain details for further discussion.  The Department of Children and Families (department) filed a care and protection petition in January 2020 and was subsequently granted temporary custody of Viola (the child).  In February 2023, the father entered a stipulation to a finding of unfitness, and permanent custody of Viola was granted to the

---

[1] A pseudonym.

[2] The mother did not attend the trial and is not part of this appeal.

department.  A review and redetermination hearing pursuant to G. L. c. 119, § 26, took place in March and April 2024, after which a Juvenile Court judge found that the father continued to be unfit and that it was in Viola's best interests that the father's parental rights be terminated.

Discussion.  "When reviewing a decision to terminate parental rights, we must determine whether the trial judge has abused [her] discretion or committed a clear error of law." Adoption of Elena, 446 Mass. 24, 30 (2006).  The decision to dispense with consent to adoption because the parent is unfit to care for the child and termination is in the child's best interests must be supported by "clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence."  Adoption of Darlene, 99 Mass. App. Ct. 696, 702 (2021).  "Parental unfitness . . . means more than ineptitude, handicap, character flaw, conviction of a crime, unusual life style, or inability to do as good a job as the child's foster parent.  Rather, the idea of parental unfitness means grievous shortcomings or handicaps that put the child's welfare much at hazard" (quotations and citation omitted).  Id. Ultimately, "the welfare of the child is the most important consideration in determining whether the parents are fit to care for their child."  Bezio v. Patenaude, 381 Mass. 563, 574 (1980).

2

1. Domestic violence. Domestic violence is "highly relevant to a judge's determination of parental unfitness." Adoption of Gillian, 63 Mass. App. Ct. 398, 404 n.6 (2005). The child reported that the father had hurt the mother on several occasions. On one occasion in 2019, the child witnessed the father, who had broken into the mother's home, assault the mother by grabbing her by the throat and choking her. Afterward, the child reported that she was unable to sleep because she feared the father would break in through the window again. See Adoption of Flavia, 104 Mass. App. Ct. 40, 49 (2024) ("[i]t is well established that exposure to domestic violence works a distinctly grievous kind of harm on children that can include imperiling their physical safety and psychological development" [quotation and citation omitted]).

The father has not developed insight into how his actions have affected the child. The father denies that any domestic violence has occurred, and he refused to participate in an intimate partner violence intervention program because he was concerned that he would get into a fight with someone at the program. See Adoption of Lisette, 93 Mass. App. Ct. 284, 294 n.15 (2018) ("parent's willingness to ignore or minimize abusive behavior can be an indicator of unfitness, regardless of whether the child is at risk of abuse").

The judge's findings about the father's history of domestic violence, minimization of and inability to understand the effects of that violence, and failure to benefit from programs designed to address domestic violence were all amply supported by the evidence. The evidence supported the judge's conclusion that the father's failure "to acknowledge the trauma to the child, how his own violent behavior caused it, or to engage in necessary services to acquire the skills to meet Viola's need for safe and responsible caregiving" Moreover, the judge's conclusion that the "father's shortcomings are severe and likely to continue undiminished into the future" was supported by the judge's findings.

2. The father's criminal history and lack of contact with the child. Consideration of a parent's criminal history bearing on parental fitness is "germane" in care and protection proceedings, to the extent that it has "a bearing on his fitness as a parent." Care & Protection of Quinn, 54 Mass. App. Ct. 117, 125 (2002). The father has served time in State prison for his convictions for numerous crimes, many of which were violent and which include possession of a firearm, assault by means of a dangerous weapon, and breaking and entering with the intent to commit a felony. The judge found that two of the father's prison sentences stemmed from his use of a motor vehicle to

4

commit assault and battery and that his history of violence and impulsivity pose a danger to Viola.

The father was incarcerated during the child's birth and was not released until she was seven years old. He was incarcerated again at the inception of trial. Since the child's removal in 2020, the father has had no contact with her. The child has reported that she hates him and is fearful of him. She also testified at trial that she does not like him, does not want to live with him, and wants his parental rights terminated. The judge properly considered the father's violent criminal history, and her findings demonstrate a sufficient link between that history and his inability to provide adequate care for the child. See Custody of Two Minors, 396 Mass. 610, 621 (1986) ("The court is permitted to assess prognostic evidence derived from prior patterns of parental neglect or misconduct in determining future fitness").

3. Continued unfitness. At trial, a "judge must decide both whether the parent is currently unfit and whether, 'on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary.'" Adoption of Ilona, 459 Mass. 53, 59 (2011), quoting Adoption of Carlos, 413 Mass. 339, 350 (1992). "Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or

5

indeterminate period." Adoption of Ilona, supra at 60. In assessing whether a parent's unfitness is likely to continue indefinitely, a judge may consider "past conduct, medical history, and present events to predict future ability and performance as a parent." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).

There was ample evidence in the record that the father's unfitness was likely to continue indefinitely. He admitted to a substance abuse problem and Viola observed drug paraphernalia in the home before her removal. The father failed to engage in most of the services offered to him and has been unable to maintain a sober lifestyle or complete any necessary counseling programs to address his issues. Additionally, his long criminal history has led him to be incarcerated and thus absent for much of the child's life. It was not error for the judge to conclude that the father's unfitness was likely to continue for a prolonged or indeterminate period.

4. Erroneous finding. We find unavailing the father's argument that the judge erred in finding that Viola hates and fears her father and would reject any current or future contact with him. In her findings, the judge attributed Viola's statements to reports filed pursuant to G. L. c. 119, § 51A (51A reports) and ruled that the 51A reports were admitted to "set the stage." Though erroneous, based on our review of the record

6

we find this misattribution to be harmless error, as the contested findings are supported by other evidence. See Care & Protection of Olga, 57 Mass. App. Ct. 821, 824-825 (2003) (findings supported by evidence or that contain immaterial errors are not clearly erroneous). That Viola stated to a department investigator in February 2020 that "[Father] sucks and [I hate] him" appeared in a report filed under G. L. c. 119, § 51B. That statement was properly admitted and considered by the judge, particularly where the child testified in camera at trial that she didn't like the father and the father's attorney, when given the opportunity, declined to ask additional questions. The contested findings were sufficiently supported. See Adoption of Luc, 484 Mass. 139, 152-154 (2020).

Decree affirmed.

By the Court (Meade,
D'Angelo & Tan, JJ.[3]),

Clerk

Entered: April 16, 2026.

---

[3] The panelists are listed in order of seniority.